|  |  |  |
|---|---|---|
| Commodity Futures Trading Commission, | ) | **United States District Court** |
| Plaintiff | ) | **Northern District of Illinois** |
|  | ) |  |
| v. | ) |  |
|  | ) | **Case No. 20-3758** |
| Long Leaf Trading Group, Inc., James A. | ) |  |
| Donelson, Timothy M. Evans, Jeremy S. | ) |  |
| Ruth, and Andrew D. Nelson, | ) |  |
| Defendants | ) |  |
|  | ) |  |

### PLAINTIFF CFTC'S UNOPPOSED MOTION FOR AN ORDER PERMITTING ALTERNATIVE SERVICE PURSUANT TO FRCP 4(e)(1)

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission") has brought claims in the above-captioned action against defendant Andrew D. Nelson ("Nelson") for fraud and failure to register, in violation of the Commodity Exchange Act ("Act") and Commission Regulations ("Regulations"). The CFTC has attempted diligently to locate Nelson and serve him with a copy of the Summons and Complaint, to no avail.[1]

The CFTC has attempted to serve Nelson at his parents' house and Nelson's last known address, only to be informed that Nelson no longer resides at either abode. The CFTC has attempted to ascertain Nelson's current whereabouts from Nelson's family members and current or former employers, but has received no material assistance. The CFTC has attempted multiple

---

[1] Counsel for defendants James A. Donelson and Long Leaf Trading Group, Inc. do not object to this motion. Counsel for the CFTC emailed Defendant Ruth who is proceeding *pro se* at this time, on July 10, 2020, to ask whether he objected to the motion. Mr. Ruth has not responded with any objection. To the extent this motion qualifies as an *ex parte* motion under Local Rule 5.5(d), the CFTC respectfully submits that the attached declaration shows good cause for proceeding on such basis.

times to contact Nelson through email addresses previously used by Nelson to communicate with Staff.

Accordingly, the CFTC respectfully requests that the Court enter an order allowing alternative service upon Nelson pursuant to Federal Rule of Civil Procedure 4(e)(1) and 735 ILCS 5/2–203.1.  In particular, the CFTC seeks leave to serve Nelson by leaving a copy of the summons and complaint at his parents' house, and by emailing Nelson a copy of the summons and complaint.

## I.  BACKGROUND

### A.  The Complaint

On June 26, 2020, the CFTC filed a complaint in the above-captioned action against Nelson and others for their role in a large-scale fraud scheme involving a "trading program" offered by Defendant Long Leaf Trading Group, Inc. ("Long Leaf").  (Doc. 1.)  Nelson was an "associated person," i.e., a salesperson, of Long Leaf from September 2017 through July 2018. (*Id*. ¶ 20.)  From July 2018 through November 2018, Nelson worked for Long Leaf reviewing and developing solicitation materials.  (*Id*.)

During his tenure at Long Leaf, Nelson made numerous false and misleading statements and omissions to customers and prospective customers about the success of the trading program. (*Id*. ¶ 69.)  For example, Nelson told one customer that, "For the last month what I've done for the more aggressive guys I have . . . they are up a little bit over fifty percent; my more conservative guys are more around the thirty-two, thirty-five percent mark."  (*Id*. ¶ 72.)  In reality, substantially all of Long Leaf's customers lost money.  (*Id*. ¶ 73.)  Nelson was aware of this from daily account statements he received, as well as from customer complaints.  (*Id*.) Nelson nonetheless failed to disclose this material fact to customers and prospective customers. (*Id*. ¶ 75.)

The Clerk of this Court on June 26, 2020, issued summons as to Nelson. Since that time, CFTC staff has attempted diligently to locate and serve Nelson.

**B.    Attempted Service on Known Potential Addresses**

In order to ascertain Nelson's address, the CFTC utilized a skip-trading service offered by Thomson Reuters called CLEAR. (Burden Decl. ¶ 4.) CLEAR is an electronic database that collects information from, e.g., credit bureaus, utility providers, secretaries of state, and the internet to assist government agencies in locating persons. (*Id*.) CLEAR showed only two addresses associated with Nelson from the past two years. (*Id*.)

The first address is 267 May St. E. in Elmhurst, IL. (*Id*. ¶ 5.) This is a single-family home owned by Nelson's parents, David and Barbara Nelson. (*Id*.) CLEAR reflects that this was last reported as Nelson's address on June 19, 2020. (*Id*.)

The second address is 1000 S. Clark Street, Unit 1717 in Chicago, IL. (*Id*. ¶ 6.) This is a large residential high-rise building with a doorman. (*Id*.) CLEAR reflects that this was last reported as Nelson's address on August 9, 2019. (*Id*.) The CFTC retained a process server to attempt service on both addresses. (*Id*.)

The process server twice attempted to serve Nelson at the Elmhurst address, on June 29 and 30. (*Id*. ¶ 7.) On the second attempt, Nelson's mother, Barbara Nelson, answered the door. (*Id*.) Mrs. Nelson advised the process server that Andrew Nelson is her son. (*Id*.) Mrs. Nelson advised the process server that Andrew Nelson no longer lives in the family home and that he lives elsewhere with his girlfriend. (*Id*.) Mrs. Nelson otherwise disclaimed any knowledge of her son's whereabouts. (*Id*.)

The process server attempted to serve Nelson at the 1000 S. Clark Street address on July 10, 2020. (*Id*. ¶ 8.) The doorman advised the process server that no Andrew Nelson resides within the building. (*Id*.)

3

**C.      Attempts to Determine Nelson's Current Whereabouts**

On July 6, 2020, CFTC staff called Mrs. Nelson on the telephone to ask if she knew where Andrew Nelson currently resided or is she could provide the name of Nelson's girlfriend. (*Id*. ¶ 9.)  Mrs. Nelson advised staff that they would have to find Nelson "some other way," and hung up the phone.  (*Id*.)

Staff attempted to determine the identity of Nelson's girlfriend through Facebook to no avail.  (*Id*. ¶ 10.)  Nelson's Facebook profile is non-public and does not reflect any relationship information.  (*Id*.)

Staff for the CFTC also attempted to locate Nelson through his recent employers.  (*Id*. ¶ 11.)  Nelson's LinkedIn profile reflects that Nelson is the managing partner of WEN Capital LLC, and has been since November 2019.  (*Id*.)  WEN Capital is not registered in any capacity with the CFTC or the Securities and Exchange Commission.  (*Id*.)  Staff has been unable to find a webpage or social media presence for WEN Capital.[2]  (*Id*.)

Nelson's LinkedIn profile also reflects that Nelson from September 2019 through the present has been employed as a Senior Associate at Chicago Crypto Capital.  (*Id*. ¶ 12.)  The office manager at Chicago Crypto advised CFTC Staff on July 13, 2020, that Nelson no longer works at the firm.  (*Id*.)  Staff for the CFTC on July 13, 2020, left a phone message for the principal of Chicago Crypto requesting a voluntary production of contact information for Nelson. (*Id*.)  No return call has been forthcoming.  (*Id*.)

---

[2] It is unclear whether Nelson's WEN Capital exists as a corporate entity.  (Burden Decl. n. 1.)  A WEN Capital LLC registered with the Illinois Secretary of State was involuntarily dissolved in 2017.  (*Id*.)  A WEN Capital LLC is currently registered with the Delaware Secretary of State, but the only contact information publicly available is for a third-party agent for service of process.  (*Id*.)

**D.        Attempts to Communicate with Nelson**

CFTC staff reached out directly to Nelson to apprise him of the above-captioned action and to request an up-to-date address.  (*Id*. ¶ 13.)  On July 1, 2020, Staff emailed Nelson at adnelson0503@gmail.com to provide him with a copy of the complaint.  (*Id*.)  On July 12, 2020, Staff emailed Nelson a second time to request an updated address in order to send a copy of the complaint and a waiver of service of process form.  (*Id*.)  Nelson has failed to respond to either email.  (*Id*.)

"adnelson0503@gmail.com" was the email address Nelson had been using to communicate with CFTC staff.  (*Id*. ¶14.)  Prior to the filing of the complaint, Nelson appeared before the CFTC to provide sworn testimony on August 6, 2019, pursuant to an administrative subpoena.  (*Id*.)  After the CFTC determined that Nelson had violated certain anti-fraud and registration provisions in the Act and Registration, CFTC staff provided Nelson with a written "Wells" notice on December 12, 2019.  (*Id*.)  The Wells notice apprised Nelson of the charges the CFTC intended to bring against him, and provided an opportunity to respond.  (*Id*.)

Nelson confirmed receipt of the Wells notice, and on January 8, 2020, requested that the CFTC direct all communications to the adnelson0503@gmail.com address.  (*Id*. ¶ 15.)  CFTC staff corresponded with Nelson over email about the Wells notice.  (*Id*.)  Nelson was initially responsive, but eventually ceased communications.  (*Id*.)

## II.        LEGAL STANDARD

Federal Rule of Civil Procedure 4(e)(1) provides that an individual may be served in a judicial district of the United States by, inter alia, following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located, in this case Illinois.  Fed. R. Civ. Proc., R. 4(e)(1).  Illinois law allows the plaintiff to move, without notice, for the court to enter an order allowing "special service" when either personal

5

service or abode service is impractical. *Nesbitt v. Regas*, No. 13 C 8245, 2015 WL 1331291, at
*4 (N.D. Ill. Mar. 20, 2015) (denying motion to quash service) (citing 735 ILCS 5/2–203.1);
*Fematt v. City of Chicago*, No. 11-CV-1530, 2011 WL 2415340, at *1–2 (N.D. Ill. June 10,
2011) (granting motion for leave to effect alternative service where defendant's address was
unknown).

A motion for special service must be accompanied by a declaration stating the nature and
extent of the investigation made to determine the whereabouts of the defendant and the reasons
why service is impractical. *Fematt*, 2011 WL 2415340, at *1–2. The declaration must include a
specific statement showing that a diligent inquiry as to the location of the individual defendant
was made and reasonable efforts to make service have been unsuccessful. *Id.*; *see also Nesbitt*,
2015 WL 1331291, at *4.

Upon a sufficient showing of diligence by the plaintiff, the court may order service to be
made in any manner consistent with due process. *Regas*, 2015 WL 1331291, at *4; *Fematt*, 2011
WL 2415340, at *1–2. In the context of service of process, due process requires only that the
court provide "notice reasonably calculated, under all the circumstances, to apprise interested
parties of the pendency of the action and afford them an opportunity to present their objections."
*Nesbitt*, 2015 WL 1331291, at *4 (quoting *Jones v. Flowers*, 547 U.S. 220, 226 (2006)).

### III.    ARGUMENT

As set forth above, the CFTC made diligent inquiry into Nelson's whereabouts and made
reasonable efforts to serve him. It is impractical for the CFTC to continue attempting to serve
Nelson in person or at his abode. Without cooperation from Nelson or his family members, the
CFTC has no way to determine the identity of Nelson's girlfriend or where he might currently be
staying.

6

Moreover, it is likely that Nelson is and will attempt to continue evading service. Nelson is well aware of the charges against him from the Wells process. Nelson also likely received the CFTC's communications about the complaint and the CFTC's request for up-to-date address information. Indeed, these communications were directed to the email address that Nelson provided to the CFTC.

Accordingly, the CFTC requests that the Court authorize alternative service. The CFTC respectfully submits that emailing Nelson the summons and complaint, as well as mailing a copy of the summons and complaint to his parents' house, would be sufficient to apprise Nelson of the pendency of the action and allow him an opportunity to present his objections. *See MetroPCS v. Devor*, No. 1:16-CV-02949, 2016 WL 9227406, at *1 (N.D. Ill. June 1, 2016) (approving alternative service in the form of service via, inter alia, email to defendant and certified mail to defendant's relatives).

## IV.     CONCLUSION

For the foregoing reasons, the CFTC respectfully requests that its motion for alternative service pursuant to Federal Rule of Civil Procedure 4(e) be granted.

/s/ Ashley J. Burden

Counsel for Commodity Futures Trading Commission
Ashley J. Burden
aburden@cftc.gov
Elizabeth M. Streit
estreit@cftc.gov
Scott R. Williamson
swilliamson@cftc.gov
Robert T. Howell
rhowell@cftc.gov
Commodity Futures Trading Commission
Division of Enforcement
525 W. Monroe St., Ste. 1100
Chicago, IL 60661
Phone:  (312) 596-0700

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2020, I provided service to the persons listed below, and

by the following means:

Via email, by agreement, to:                    Via email and to the last known address of:

Nicholas P. Iavarone                              Jeremy S. Ruth
The Iavarone Law Firm, P.C.                       11220 Brista Way
2416 Waukegan Road, #399                          Austin, TX 78726
Glenview, Illinois 60025                          jeremysruth@hotmail.com
niavarone@iavaronefirm.com

                                                  *Pro se*
Landsman Law Firm, LLC
33 North LaSalle St, Suite 1400
Chicago, IL 60602-2610
larry@landsmanfirm.com

Counsel to Long Leaf Trading Group, Inc. and
James A. Donelson



/s/ Ashley J. Burden

Counsel for Commodity Futures Trading Commission
Ashley J. Burden
aburden@cftc.gov
Commodity Futures Trading Commission
Division of Enforcement
525 W. Monroe St., Ste. 1100
Chicago, IL 60661
Phone: (312) 596-0700