# CFTC Ex. 537

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission,<br><br>    Plaintiff,<br><br>v.<br><br>Long Leaf Trading Group, Inc., James A. Donelson, Timothy M. Evans, Jeremy S. Ruth, and Andrew D. Nelson,<br><br>    Defendants. | Case No. 20-3758<br><br>Hon. Thomas A. Durkin |

**Defendant Long Leaf Trading's Answers and**
<u>**Objections to Plaintiff CFTC's Second Set of Requests for Admission**</u>

Pursuant to Rule 36 of the Federal Rules of Civil Procedure Defendant Long Leaf Trading Group, Inc. ("Defendant" or "Long Leaf"), by and through its attorney, James M. Falvey, Falvey Law Office, responds to Plaintiff CFTC's ("Plaintiff" or "CFTC") Second Set of Requests for Admission ("Request" or "Requests") as follows:

**<u>General Statement & Objections</u>**

In certain Requests for Admission, below, Long Leaf made reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit

1

or deny the Request because, as to the time period prior to Mr. James Donelson becoming a principal of Long Leaf, there is limited information available. Mr. Donelson became a principal in December 2017 (the period of time from December 2017 to December 2019 will be referred to as the "Donelson Period"). Where possible, for the period of time prior to Donelson becoming a principal, Long Leaf relied on its books and records to admit or deny such Request (the period of time prior to December 2017 will be referred to as the "Evans Period").

Long Leaf is of the view that a prior principal, and founder of Long Leaf, Tim Evans, may be the only person able to answer certain Requests. Tim Evans' present location is thought to be in Mexico. However, thus far, he has yet to be contacted by Long Leaf, nor the CFTC (as acknowledged by the CFTC in the Court hearing on January 19, 2021, as well as in phone calls between Donelson's/Long Leaf's counsel and the CFTC). Accordingly, should Evans become available and willing to shed light on certain Requests, Long Leaf will supplement its responses. Also, if Long Leaf discovers additional facts, perhaps via a witness that has knowledge of facts currently unknown to Long Leaf, then Long Leaf will supplement its responses.

## Specific Objections and Answers

24. Admit that Long Leaf Trading did not track the performance of the trades recommended pursuant to the trading program.

**ANSWER:** Long Leaf denies this Request for Donelson Period. After a diligent inquiry, Long Leaf is unable to answer this Request for the Evans

Period because it lacks knowledge or information sufficient to form a belief about the truth of the admission.

25. Admit that as of the date that James A. Donelson began recommending trades to Long Leaf Trading customers in connection with the trading program, Long Leaf Trading had not disclosed to customers or prospective customers that James A. Donelson had never previously recommended trades to any customer in any capacity, including as a trading principal.

**ANSWER:** Long Leaf objects to this Request as it states facts that are not accurate. Specifically, before Mr. Donelson began recommending trades, he worked with Scott Gecas on development and structure of trades during the first year of his ownership of Long Leaf. Without waiving the objection, Long Leaf denies this request.

26. Admit that, in any professional capacity (that is, in any capacity where James A. Donelson was being compensated for providing professional services), James A. Donelson had never designed or implemented options trading strategies before December 1, 2017.

**ANSWER**: Long Leaf denies this Request. Mr. Donelson had designed hedging strategies for currency exposure while employed at GETCO Group. These strategies were ultimately not implemented.

27. Admit that any options trading that James A. Donelson conducted before December 1, 2017, in a personal capacity (that is, for his personal account

3

or for others without compensation) resulted in net losses.

**ANSWER**: Long Leaf admits this Request as to the personal trading of Mr. Donelson. His personal trading of options were in the form of hedges, which resulted in net losses.

28. Admit that Long Leaf Trading never disclosed to customers or prospective customers that James A. Donelson had no experience profitably trading options in any capacity before December 1, 2017.

**ANSWER**: Long Leaf admits this Request.

29. Admit that Long Leaf Trading did not disclose to customers or prospective customers the largest monthly draw-down for the (i) life of the trading program and (ii) year-to-date expressed as a percentage of client funds.

**ANSWER**: Long Leaf objects to this request as it is not relevant. That is, Long Leaf was not required to make these disclosures as an Introducing Broker ("IB"). These are requirements of a Commodity Trading Advisor ("CTA") per the regulations and Long Leaf was not a CTA. Subject to the foregoing objection, Long Leaf admits that it did not make these disclosures to customers or prospective customers during the Donelson Period. As to the Evans Period, Long Leaf is unable to answer this Request because it lacks knowledge or information sufficient to form a belief about the truth of the admission.

30. Admit that Long Leaf Trading did not ever attempt to identify or calculate its largest monthly draw-down for the trading program for the (i) life of

4

the trading program and (ii)year-to-date expressed as a percentage of client funds.

**ANSWER**: Long Leaf objects to this request as it is not relevant. That is, Long Leaf was not required to attempt to identify or calculate its largest monthly draw-down for the trading program for the (i) life of the trading program and (ii) year-to-date expressed as a percentage of client funds as an IB. These are requirements of a CTA per the regulations and Long Leaf was not a CTA. Subject to the foregoing objection, Long Leaf admits that it did not make these calculations during the Donelson Period. As to the Evans Period, Long Leaf is unable to answer this Request because it lacks knowledge or information sufficient to form a belief about the truth of the admission.

31. Admit that Long Leaf Trading did not disclose to customers or prospective customers the number of accounts opened and closed during the life of the trading program with a positive net lifetime rate of return as of the date the account was closed.

**ANSWER**: Long Leaf objects to this request as it is not relevant. That is, Long Leaf was not required to disclose to customers or prospective customers the number of accounts opened and closed during the life of the trading program with a positive net lifetime rate of return as of the date the account was closed as an IB. These are requirements of a CTA per the regulations and Long Leaf was not a CTA. Subject to the foregoing objection, Long Leaf admits that it did not make these calculations during the Donelson Period. As to the Evans

5

Period, Long Leaf is unable to answer this Request because it lacks knowledge or information sufficient to form a belief about the truth of the admission.

32. Admit that Long Leaf Trading did not disclose to customers or prospective customers the number of accounts opened and closed during the life of the trading program with a negative net lifetime rate of return as of the date the account was closed.

**ANSWER**: Long Leaf objects to this request as it is not relevant. That is, Long Leaf was not required to disclose to customers or prospective customers the number of accounts opened and closed during the life of the trading program with a negative net lifetime rate of return as of the date the account was closed as an IB. These are requirements of a CTA per the regulations and Long Leaf was not a CTA. Subject to the foregoing objection, Long Leaf admits that it did not make this disclosure during the Donelson Period. As to the Evans Period, Long Leaf is unable to answer this Request because it lacks knowledge or information sufficient to form a belief about the truth of the admission.

33. Admit that Long Leaf Trading did not attempt to calculate or track the lifetime rates of return for the customer accounts that participated in the trading program.

**ANSWER**: Long Leaf objects to this request as it is not relevant. That is, Long Leaf did not attempt to calculate or track the lifetime rates of return for

6

the customer accounts that participated in the trading program as an IB. These are requirements of a CTA per the regulations and Long Leaf was not a CTA. Subject to the foregoing objection, Long Leaf admits that it did not make this disclosure during the Donelson Period. As to the Evans Period, Long Leaf is unable to answer this Request because it lacks knowledge or information sufficient to form a belief about the truth of the admission.

34. Admit that in 2019 Long Leaf Trading authorized its brokers to provide to prospective customers information concerning the performance of the trading program that reflected positive net returns.

**ANSWER:** Long Leaf admits that it provided trade performance information to prospective customers during 2019 based on actual results of trades made by Long Leaf. To the extent that the Request seeks any additional information, it is denied.

35. Admit that in connection with the trading program Long Leaf Trading tailored its trading recommendations to specific customer accounts based on the amount of equity in the account.

**ANSWER:** Long Leaf denies that, during the Donelson Period, it tailored its trading recommendations to specific customer accounts based on the amount of equity in the account. As to the Evans Period, Long Leaf is unable to answer this Request because it lacks knowledge or information sufficient to form a belief about the truth of the admission.

7

36. Admit that Long Leaf Trading's customer solicitation process including multiple steps, including the "demo" and the "custom."

**ANSWER:** Long Leaf admits that its customer solicitation process included multiple steps during 2018. However, denies this request as to 2019, as the customer solicitation process (in 2019) did not include multiple steps, and did not include a "custom" step. As to the Evans Period, Long Leaf is unable to answer this Request because it lacks knowledge or information sufficient to form a belief about the truth of the admission.

37. Admit that, to the extent the National Futures Association ("NFA") reviewed Long Leaf Trading's solicitation materials in 2019, the NFA only reviewed material related to the "demo" and not related to the "custom."

**ANSWER:** Long Leaf admits that the NFA reviewed Long Leaf's solicitation materials in 2019. Further, Long Leaf admits that the NFA did not review any "custom" materials because there was no custom presentation in 2019.

Dated: April 19, 2021

/s/ James M. Falvey
James M. Falvey
Falvey Law Office
200 S. Wacker Drive, Suite 3100
Chicago, Illinois 60606
312.404.5839 (office & mobile)
jimfalvey@yahoo.com

Attorney for Defendants
James A. Donelson &
Long Leaf Trading

8

## **Certificate of Service**

I, James M. Falvey, hereby certify that on April 19, 2020, I provided service to the persons listed below via email:

| | |
|---|---|
| | Commodity Futures Trading <br> <u>Chicago Regional Office</u> |
| Andrew D. Nelson <br> 267 May St. E. <br> Elmhurst, IL 60126 <br> adnelson0503@gmail.com <br><br> *Pro se* <br><br> Andrew S. May <br> Partner <br> Hinshaw & Culbertson LLP <br> 151 North Franklin Street, Suite 2500, <br> Chicago, IL 60606 <br> amay@hinshawlaw.com | Ashley J. Burden <br> Senior Trial Attorney <br> aburden@cftc.gov <br><br> Joseph C. Platt <br> Trial Attorney <br> jplatt@cftc.gov <br><br> Elizabeth M. Streit <br> Chief Trial Attorney <br> estreit@cftc.gov <br><br> Joseph J. Patrick <br> Investigator <br> jpatrick@cftc.gov |

/s/ James M. Falvey
**James M. Falvey**

9