CFTC Ex. 528

**UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| Commodity Futures Trading Commission, | ) ) ) ) |
| Plaintiff, | ) ) Case No. 20-3758 |
| v. | ) ) Hon. Thomas A. Durkin |
| Long Leaf Trading Group, Inc., James A. Donelson, Timothy M. Evans, Jeremy S. Ruth, and Andrew D. Nelson, | ) ) ) ) ) |
| Defendants. | |

### Defendant Long Leaf Trading's Answers and Objections to Plaintiff CFTC's First Set of Requests for Admission

Pursuant to Rule 36 of the Federal Rules of Civil Procedure Defendant Long Leaf Trading Group, Inc. ("Defendant" or "Long Leaf"), by and through its attorney, James M. Falvey, Falvey Law Office, responds to Plaintiff CFTC's ("Plaintiff" or "CFTC") First Set of Requests for Admission ("Request" or "Requests") as follows:

### General Statement & Objections

The following responses are based upon information presently available to Long Leaf and are made without prejudice to the right to utilize subsequently discovered facts or witnesses or documents or things or legal arguments. Long Leaf

1

specifically reserves the right to modify and/or supplement these discovery responses if and to the extent required or permitted under the Federal Rules of Civil Procedure.

In certain Requests for Admission, below, Long Leaf made reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny the Request because, as to the time period prior to Mr. James Donelson becoming a principal of Long Leaf, there is limited information available. Mr. Donelson became a principal in December 2017. Where possible, for the period of time prior to Donelson becoming a principal, Long Leaf relied on its books and records to admit or deny such Request. Long Leaf is of the view that a prior principal, and founder of Long Leaf, Tim Evans, may be the only person able to answer certain Requests. Tim Evans' present location is thought to be in Mexico. However, thus far, he has yet to be contacted by Long Leaf, as well as the CFTC (as acknowledged by the CFTC in the Court hearing today, January 19, 2021). Accordingly, should Evans become available and willing to shed light on certain Requests, Long Leaf will supplement its responses. Also, if Long Leaf discovers additional facts, perhaps via a witness that has knowledge of facts currently unknown to Long Leaf, then Long Leaf will supplement its responses.

<p align="center"><strong><u>Specific Objections and Answers</u></strong></p>

**Request for Admission No. 1**: Admit that Long Leaf's trading program included options trade recommendations provided by Long Leaf Trading to customers.

>**Answer:** Long Leaf admits ¶ 1 that its trading program included options trade recommendations provided by Long Leaf Trading to customers.

**Request for Admission No. 2**: Admit that Long Leaf Trading recommended trades to customers as part of the trading program because Long Leaf Trading believed those trades to be valuable or advisable.

>**Answer:** Long Leaf admits ¶ 2 that it recommended trades to customers as part of the trading program because Long Leaf Trading believed those trades to be valuable or advisable for the specific period that Mr. Donelson was a principal of Long Leaf, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the admission as it relates to the period of time prior to his becoming a principal. Mr. Donelson has been a principal of Long Leaf from December 2017 to the present (the "Donelson Period"). However, Long Leaf ceased operations in December 2019, although it is a company that is still in good standing in the state of Illinois. As to the period prior to Mr. Donelson's ownership (the "Pre-Donelson Period"), Long Leaf has made reasonable inquiry to attempt to enable it to admit or deny the Request, but was unable to do so as the information was not readily attainable in Long Leaf company records, nor was there any individual available to Long Leaf with knowledge sufficient to enable Long Leaf to answer this Request.

**Request for Admission No. 3**: Admit that, as part of the Long Leaf Trading

3

trading program, a customer could either approve or disapprove of the trade recommendation.

> **Answer:** Long Leaf admits ¶ 3 that as a part of its trading program, a customer could either approve or disapprove of the trade recommendation for the Donelson Period, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the admission as it relates to Pre-Donelson Period. Furthermore, as to the Pre-Donelson Period, Long Leaf has made reasonable inquiry to attempt to enable it to admit or deny the Request, but was unable to do so as the information was not readily attainable in Long Leaf company records, nor was there any individual available to Long Leaf with knowledge sufficient to enable Long Leaf to answer this Request.

**Request for Admission No. 4**: Admit that, as part of the Long Leaf Trading trading program, if a customer approved the recommended trade then Long Leaf Trading would cause the trade to be executed on the customer's behalf.

> **Answer:** Long Leaf admits ¶ 4 that, as part of the Long Leaf Trading trading program, if a customer approved the recommended trade then Long Leaf Trading would cause the trade to be executed on the customer's behalf for the Donelson Period, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the admission as it relates to the Pre-Donelson Period. Furthermore, as to the Pre-Donelson

4

Period, Long Leaf has made reasonable inquiry to attempt to enable it to admit or deny the Request, but was unable to do so as the information was not readily attainable in Long Leaf company records, nor was there any individual available to Long Leaf with knowledge sufficient to enable Long Leaf to answer this Request.

**Request for Admission No. 5**: Admit that zero Long Leaf Trading customers that participated in the Long Leaf Trading trading program executed options trades through Long Leaf Trading other than options trades recommended to the customer by Long Leaf Trading as part of the trading program.

> **Answer:** Mr. Donelson admits ¶ 5 that zero Long Leaf Trading customers that participated in the Long Leaf trading program executed options trades through Long Leaf Trading other than options trades recommended to the customer by Long Leaf Trading as part of the trading program for the Donelson Period, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the admission as it relates to the Pre-Donelson Period. Furthermore, as to the Pre-Donelson Period, Long Leaf has made reasonable inquiry to attempt to enable it to admit or deny the Request, but was unable to do so as the information was not readily attainable in Long Leaf company records, nor was there any individual available to Long Leaf with knowledge sufficient to enable Long Leaf to answer this Request.

5

**Request for Admission No. 6**: Admit that Long Leaf Trading had at least 319 customers.

> **Answer:** Long Leaf admits ¶ 6 that it had at least 319 customers.

**Request for Admission No. 7**: Admit that at least 195 of Long Leaf Trading's customers participated in Long Leaf Trading's trading program.

> **Answer:** Long Leaf admits ¶ 7 that that at least 195 of Long Leaf Trading's customers participated in Long Leaf Trading's trading program.

**Request for Admission No. 8**: Admit that at least 79 Long Leaf Trading customer accounts were opened or initially funded after December 1, 2017.

> **Answer:** Long Leaf admits ¶ 8 that at least 79 Long Leaf Trading customer accounts were opened or initially funded after December 1, 2017.

**Request for Admission No. 9**: Admit that all of the at least 79 Long Leaf Trading customer accounts that were opened or initially funded after December 1, 2017, participated in the Long Leaf Trading trading program.

> **Answer:** Long Leaf admits ¶ 9 that all of the at least 79 Long Leaf Trading customer accounts that were opened or initially funded after December 1, 2017, participated in the Long Leaf Trading trading program.

**Request for Admission No. 10**: Admit that Long Leaf Trading marketed its trading program to the general public through the Long Leaf Trading website.

**Answer:** Long Leaf admits ¶ 10 that Long Leaf Trading marketed its trading program to the general public through the Long Leaf Trading website.

**Request for Admission No. 11**: Admit that Long Leaf Trading marketed its trading program to the general public through oral or written solicitations of prospective customers.

**Answer:** Long Leaf admits ¶ 11 that Long Leaf Trading marketed its trading program to the general public through oral or written solicitations of prospective customers.

**Request for Admission No. 12**: Admit that Long Leaf Trading employed a staff of associated persons whose duties included soliciting members of the general public to participate in the trading program.

**Answer:** Long Leaf admits ¶ 12 that Long Leaf Trading employed a staff of associated persons whose duties included soliciting members of the general public to participate in the trading program.

**Request for Admission No. 13**: Admit that Long Leaf Trading did not limit participation in the trading program to existing customers.

**Answer:** Long Leaf objects to this Request as it is vague, ambiguous, and unintelligible. Subject to, and without waiving the foregoing objections, Long Leaf denies this Request.

7


**Request for Admission No. 14**: Admit that Long Leaf Trading received compensation from its Time Means Money customers in the form of commissions.

> **Answer:** Long Leaf admits ¶ 14 that Long Leaf Trading received compensation from its Time Means Money customers in the form of commissions.

**Request for Admission No. 15**: Admit that commissions earned by Long Leaf Trading in connection with the trading program would not have been paid to Long Leaf Trading absent Long Leaf Trading's trade recommendations.

> **Answer:** Long Leaf denies ¶ 15 because the customer was required to agree to the trade and its execution, otherwise Long Leaf would not have earned commissions. As noted in ¶ 3, above, the customer had the right to approve or disapprove any trade recommendation.

**Request for Admission No. 16**: Admit that the commissions earned by Long Leaf Trading in connection with its trading program were are [sic] a result of its trading recommendations.

> **Answer:** Long Leaf denies ¶ 16 because the customer was required to agree to the trade and its execution, otherwise Long Leaf would not have earned commissions. As noted in ¶ 3, above, the customer had the right to approve or disapprove any trade recommendation.

**Request for Admission No. 17**: Admit that Long Leaf Trading's trading program's trade recommendations were conceived of and structured by Long Leaf Trading.

> **Answer:** Long Leaf admits ¶ 17 that Long Leaf Trading's trading program's trade recommendations were conceived of and structured by Long Leaf Trading during the Donelson Period, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the admission as it relates to the Pre-Donelson Period. Additionally, for the month of December 2017, Long Leaf engaged a Series 3 broker to develop the trades which were reviewed by Long Leaf before being sent to clients. Furthermore, as to the Pre-Donelson Period, Long Leaf has made reasonable inquiry to attempt to enable it to admit or deny the Request, but was unable to do so as the information was not readily attainable in Long Leaf company records, nor was there any individual available to Long Leaf with knowledge sufficient to enable Long Leaf to answer this Request.

**Request for Admission No. 18**: Admit that Long Leaf Trading did not receive trade recommendations from third parties that Long Leaf Trading would then pass along to Long Leaf Trading customers as part of the trading program.

> **Answer:** Long Leaf admits ¶ 18 that Long Leaf Trading did not receive trade recommendations from third parties that Long Leaf Trading would

9

then pass along to Long Leaf Trading customers as part of the trading program during the Donelson Period, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the admission as it relates to the Pre-Donelson Period. Additionally, for the month of December 2017, Long Leaf engaged a Series 3 broker to develop the trades which were reviewed by Long Leaf before being sent to clients. Furthermore, as to the Pre-Donelson Period, Long Leaf has made reasonable inquiry to attempt to enable it to admit or deny the Request, but was unable to do so as the information was not readily attainable in Long Leaf company records, nor was there any individual available to Long Leaf with knowledge sufficient to enable Long Leaf to answer this Request.

**Request for Admission No. 19**: Admit that Long Leaf Trading has not at any time provided prospective customers with accurate information concerning Long Leaf Trading's trading performance in connection with soliciting participation in the trading program.

**Answer:** Long Leaf denies ¶ 19 that Long Leaf Trading has not at any time provided prospective customers with accurate information concerning Long Leaf Trading's trading performance in connection with soliciting participation in the trading program during the Donelson Period, but otherwise lacks knowledge or information sufficient to form a belief

>about the truth of the admission as it relates to periods prior to his ownership. Furthermore, as to the Pre-Donelson Period, Long Leaf has made reasonable inquiry to attempt to enable it to admit or deny the Request, but was unable to do so as the information was not readily attainable in Long Leaf company records, nor was there any individual available to Long Leaf with knowledge sufficient to enable Long Leaf to answer this Request.

**Request for Admission No. 20**: Admit that Long Leaf Trading has not at any time disclosed to prospective clients any information described in 17 C.F.R. § 4.35(b), including but not limited to disclosure that neither Long Leaf Trading nor any of its trading principals had ever previously directed any accounts.

>**Answer:** Long Leaf objects to this Request as it is vague, ambiguous, and unintelligible specifically as to the meaning of "directed any accounts." Subject to, and without waiving the foregoing objections, Long Leaf denies ¶ 20.

**Request for Admission No. 21**: Admit that James Donelson was the owner of Long Leaf Trading from December 2017 through the date Long Leaf Trading ceased business operations.

>**Answer:** Long Leaf admits ¶ 21 that Donelson was a principal of Long Leaf. Furthermore, Long Leaf is and was owned by Donelson Enterprises, Inc., from December 2017 through the date Long Leaf

11

ceased business operations

**Request for Admission No. 22**: Admit that from December 2017 through the date Long Leaf Trading ceased business operations, James Donelson held authority to hire, discipline, or fire Long Leaf Trading employees or agents.

>**Answer:** Long Leaf admits ¶ 22 that Mr. Donelson was a principal of Long Leaf and therefore had those authorities.

**Request for Admission No. 23**: Admit that from December 2017 through the date Long Leaf Trading ceased business operations, James Donelson held authority to approve trade recommendations sent to Long Leaf Trading customers as part of the Time Means Money program.

>**Answer:** Long Leaf admits ¶ 23 that Mr. Donelson was a principal of Long Leaf and therefore had those authorities.

Dated: January 19, 2021

/s/ James M. Falvey
James M. Falvey
Falvey Law Office
200 S. Wacker Drive, Suite 3100
Chicago, Illinois 60606
312.404.5839 (office & mobile)
jimfalvey@yahoo.com

Attorney for Defendants
James A. Donelson &
Long Leaf Trading

## Certificate of Service

I, James M. Falvey, hereby certify that on January 19, 2020, I provided service to the persons listed below via email:

| | |
|---|---|
| | Commodity Futures Trading <br> <u>Chicago Regional Office</u> |
| Andrew D. Nelson <br> 267 May St. E. <br> Elmhurst, IL 60126 <br> adnelson0503@gmail.com <br><br> *Pro se* | Ashley J. Burden <br> Senior Trial Attorney <br> aburden@cftc.gov <br><br> Joseph C. Platt <br> Trial Attorney <br> jplatt@cftc.gov |
| Andrew S. May <br> Partner <br> Hinshaw & Culbertson LLP <br> 151 North Franklin Street, Suite 2500, <br> Chicago, IL 60606 <br> amay@hinshawlaw.com | Elizabeth M. Streit <br> Chief Trial Attorney <br> estreit@cftc.gov <br><br> Joseph J. Patrick <br> Investigator <br> jpatrick@cftc.gov |

/s/ James M. Falvey
**James M. Falvey**