**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Commodity Futures Trading Commission, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-3758 |
| vs. | ) | |
| | ) | Hon. Thomas A. Durkin |
| | ) | |
| Long Leaf Trading Group, Inc. et al. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT JAMES A. DONELSON'S RESPONSE TO COMMODITY FUTURES TRADING COMMISSION'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Defendant James A. Donelson ("Donelson"), by his attorneys, James Falvey and Charles E. McElvenny, submits the following as his response to Plaintiff Commodity Futures Trading Commission's ("CFTC" or "Commission") Partial Motion for Summary Judgment ("Motion"):

## INTRODUCTION

Plaintiff makes bold claims about the purported strength of its case but its motion relies almost exclusively on unsupported conclusions and the mischaracterization of testimony in support of summary judgment. The Commission does this for a simple reason - the record does not support a finding of liability much less one via dispositive motion. Indeed, the CFTC glosses over elements essential to its claims in the face of testimony and affidavits that undermine its conclusory findings because an honest review of the record reveals that, although the results were unquestionably disappointing and frustrating for Long Leaf's customers, there are no facts that support a finding of fraud. Plaintiff's other claims are similarly deficient in a summary judgment context and the motion should be denied.

## STATEMENT OF FACTS

Defendant's response to Plaintiff's statement of facts is set forth in Defendant James A. Donelson's Response to Local Rule 56.1(a)(3) Statement of Undisputed Facts, filed separately. ("Donelson Response to Statement of Facts") Defendant James A. Donelson also filed a separate Statement of Additional Facts pursuant to Local Rule 56.1(b)(3)(C). ("Donelson Additional Statement of Facts")

## STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court should take all facts and inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) (Judge James F. Holderman Opinion, 06 C 2965, dated 10/4/2007, p. 2). The court's function is not to weigh the evidence to determine the truth of the matters asserted, but to determine whether there exists a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986) (Judge James F. Holderman Opinion, 06 C 2965, dated 10/4/2007, p. 2).

## ARGUMENT - COUNTS I-III

### A. The CFTC is Not Entitled To Summary Judgment On Count I (Options Fraud)

To establish fraud, the CFTC must prove: (1) that Defendants made a misrepresentation, misleading statement, or deceptive omission; (2) with scienter; and (3) the misrepresentation, misleading statement, or omission was material." *Commodity Futures Trading Comm'n v.*

*Fintech Inv. Grp.*, 6:20-cv-652-WWB-EJK, at *1 (M.D. Fla. Dec. 14, 2021) As demonstrated below, in this case the CFTC fails to establish a single element.

I.      The Commission Fails to Establish a Material, Deceptive Misrepresentation or Omission[1]

The Commission's attempt to establish the misrepresentation/omission wisely does not argue that Donelson made an affirmative misleading statement (he never did). Rather, Plaintiff first submits that Donelson fraudulently omitted to disclose that all of Long Leaf's customers lost money and that this omission, on its own, is sufficient to satisfy the first element of fraud. As discussed below, the legal and factual basis for this position is dubious.

The Motion claims that "Despite his awareness of trading losses, Donelson sought to conceal these facts from customers and prospective customers" implying a sinister motive absent citation. Motion, p. 5.   But context is critical: Donelson had only been at Long Leaf for three months at the time of the alleged material omission and he was adopting a new trading program that was a departure from the prior model. (Donelson Response to Statement of Facts par. 48) So Donelson had no reason to disclose losses that occurred under prior ownership/control and under a different trading model, nor does the CFTC submit that Donelson had any duty or other obligation to disclose anything. Instead, the Motion focuses on the fact that Donelson instructed his APs to say that it was Long Leaf's policy not to provide information on past performance. (Donelson Response to Statement of Facts par. 49) Again, this fact is submitted without context - given Donelson's short time at the firm and the recently adopted strategy under his supervision, this is a reasonable directive. In any event, it is unclear how this fact is deceptive on its face and CFTC does not bother to explain a connection.

---

[1] The Commission does not bother to address materiality in any portion of its Motion. As with the other elements, apparently it hopes the Court will infer it from its conclusory statements.

The Commission then cites a single case, *Com. Futures Trad. v. R.J. Fitzgerald Co.*, 310 F.3d 1321 (11th Cir. 2002) as precedent that the omission of past performance is essentially *per se* deceptive when customers lost money. *Com. Futures Trad. v. R.J. Fitzgerald Co.* is clearly distinguishable, however. In that case the defendants hosted a seminar and paid for a television commercial that included a number of affirmative statements (unlike here). And the Court considered those statements when commenting on the fact that 95% of the defendants' customers lost money:

> "Given the extremely rosy picture for profit potential painted in the Seminar and in the Commercial, a reasonable investor *surely* would want to know - before committing money to a broker- that 95% or more of RJFCO investors lost money." *Com. Futures Trad. v. R.J. Fitzgerald Co., 1332.*

The Commission offers no argument to extend the *Com. Futures Trad. v. R.J. Fitzgerald Co.* analysis to the facts of this case and neglects to cite any other case, let alone one within the last twenty years, to support its inference. Most important, Plaintiff fails to explain why the decision to not provide information on past performance on this is deceptive or material, either explicitly or via the overall message, choosing instead to leave an unsupported conclusion about the import of this alleged omission on the Court's (and Defendant's) doorstep.

Plaintiff next argues that the trading histories provided by Long Leaf to customers were "false and misleading". Motion, p. 6. In support, the Commission cites its Statement of Facts 58-66. However, Donelson's Response to Statement of Facts denies critical facts and specifically contests that any of these cited trades were hypothetical. (Donelson Response to Statement of

4

Facts 58-66, esp. 61 and 66) Where Plaintiff highlights specific trades shown to customers as problematic, it doesn't even attempt to explain why such a showing is misleading, highly unreasonable or that Donelson intended to deceive customers or potential customers. Instead, the Commission wants the Court to reach legal conclusions based on isolated facts untethered to an explanation of how the fact satisfies the first element of fraud.[2] And again, Plaintiff mischaracterizes case law to support its self-serving and conclusory position - in *U.S. Commodity Futures Trading Comm'n v. Kratville*, 796 F.3d 873 (8th Cir. 2015) the defendants made affirmative misrepresentations and represented one group of results for another. *Id.* Those facts are nothing like this case where defendants used recent trades to demonstrate what they believed was the viability of their model. And, unlike the Commission's position, there is evidence in the record to support it - the only expert testimony in this case explicitly states that the trading strategy provided under Donelson's supervision was viable and it made sense to recommend those positions. (Donelson Additional Statement of Facts Par. 1).

Plaintiff's third attempt to establish a material omission relates to his alleged failure to disclose his lack of trading experience. As an initial matter, the cited "undisputed" facts are disputed. Donelson Response to Statement of Facts Par. 56-57. Moreover, Plaintiff offers nothing to explain why such information is relevant; the only time it asserts that this alleged omission was misleading it is unsupported by authority or citation to the record. *See* Motion, p. 8. Instead, Plaintiff employs its preferred tactic of citing a case without clarification or explanation as to why and how it applies. *See* Motion, p. 8.

---

[2] The CFTC also contradicts itself on key facts; the email cited by the Commission states that it is from "recent performance" and reflects actual trades, not hypothetical trades as asserted elsewhere by the CFTC. (Donelson Response to Statement of Facts 64, 66; Motion p. 7)

Plaintiff's fourth and final effort relating to an alleged misrepresentation relates to Donelson's alleged inducement to Long Leaf APs to make false and misleading statements. But the facts cited don't support the Commission's inference - rather, they make clear that the returns showed to customers in this instance *were* hypothetical and that there was a target range of return. (Donelson Response to Statement of Facts Pars. 38-46) It is unclear how a projection that is identified as such and the use of the word target, when used in its commonly understood manner, can be false and misleading. At the very least the Commission and the Motion don't explain it but rely, yet again, on conclusory language that presumes statements were false or misleading without doing any of the work to demonstrate the same.

II.      The Commission Fails to Establish Scienter

The Commission also fails to establish scienter and, in fact, doesn't even attempt to argue the point. Indeed, after describing scienter on page 4, the motion literally does not mention it substantively again, excepting a convoluted footnote. "For purposes of fraud or deceit in an enforcement action, scienter is established if Defendant intended to defraud, manipulate, or deceive, or if Defendant's conduct represents an extreme departure from the standards of ordinary care." *U.S. Commodity Futures Trading Comm'n v. Kratville*, 796 F.3d 873, 893 (8th Cir. 2015). In the context of federal securities… scienter is met when Defendant's conduct involves "highly unreasonable omissions or misrepresentations . . . that present a danger of misleading [customers] which is either known to the Defendant or so obvious that Defendant must have been aware of it." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001). Not once does the Commission explain how Donelson's conduct arguably meets this standard.

Additionally, the testimony of Donelson's expert, which remains uncontested, discloses a finding of scienter. (Donelson Additional Statement of Facts Par. 1)

### B. The CFTC is Not Entitled To Summary Judgment On Count II (CTA Fraud)

Long Leaf was not a CTA.[3] Even if this Court finds that Long Leaf was a CTA, Donelson acted in good faith with regard to the trading strategies employed by Long Leaf. (Donelson Additional Statement of Facts Par. 1). Because the Commission did nothing but misconstrue statements of fact told to prospective customers (*supra* at p. 6) it has not established that as a controlling person Donelson did anything to impute liability to himself.

### C. The CFTC is Not Entitled To Summary Judgment On Count III (CTA Fraud)

The Commission does not make a single citation to the record other than a citation to Document Number 1. In any case, this portion of the Motion is so unclear that it is near impossible to respond. Accordingly, Donelson adopts his arguments above in response.

### COUNTS IV-VI

### D. Defendants Donelson and Long Leaf Trading were not CTAs

A substantial portion of the CFTC's motion for summary judgment rests on the argument that Mr. Donelson and Long Leaf[4] were Commodity Trading Advisors ("CTA"). Specifically, Counts II (Fraud by a CTA), III (Fraudulent Advertising by a CTA), IV (Failure to Register as a

---

[3] Donelson adopts Section D below and incorporates it via reference.

[4] Mr. Donelson is only able to argue that Long Leaf was not a CTA during his tenure at Long Leaf from December 2017 through December 2019 (a total of 25 months). He was not present during the Tim Evans ownership of Long Leaf and the records provided to him by Tim Evans were either lacking or non-existent prior to Mr. Donelson becoming the owner of Long Leaf. That said, Mr. Donelson understands that Defendant Jeremy Ruth, who only worked for Tim Evans and not Mr. Donelson, plans to argue that Long Leaf was not a CTA during the Evans' ownership period of Long Leaf, as well, and based on arguments that Mr. Donelson raises here. But, again, Mr. Donelson is unable to argue about the status of Long Leaf prior to December 2017. Thus, when Mr. Donelson argues in this brief about Long Leaf, he is referring to Long Leaf during the period of time when he was the owner.

CTA), and V (Failure to Provide Required Disclosures for a Trading Program by a CTA) (collectively the "CTA Claims") all require that Mr. Donelson and Long Leaf are CTAs. Accordingly, if the Commission is unable to demonstrate that there are no material issues of fact regarding whether Mr. Donelson and Long Leaf should have registered as a CTA, which they can't, then the CFTC cannot prevail in its summary judgment motion. Furthermore, if any party is entitled to summary judgment on the CTA Claims, it is Mr. Donelson and Long Leaf, as described below.

**CFTC Regulations Provide an Exemption for trading entities that are registered as**

**Introducing Brokers**

CFTC Regulation 17 CFR § 4.14(6) (Exemption from registration as a commodity trading advisor) provides that:

> [A person is not required to register under the Commodity Exchange Act as a commodity trading advisor if:]
>
> (6) It is registered under the [Commodity Exchange Act] as an introducing broker and the person's trading advice is solely in connection with its business as an introducing broker.

It is undisputed that, at all times during the ownership of Long Leaf Trading by Donelson (and prior to Mr. Donelson's ownership), Long Leaf was registered as an Introducing Broker. Of course, simply because an entity registers an Introducing Broker does not mean that they automatically are exempted from registering in other capacities or doing other things. So, the items below discuss what the Commission and the NFA have clarified are key considerations for this analysis. *See, e.g.,* Registration as a CTA, National Futures Association (2018 & 2019) ("All registered CTAs who *manage or exercise discretion* over customer accounts must be NFA

8

Members")(emphasis added)(attached to this Memorandum and found via the Waybackmachine.com)("NFA CTA Notices").

**Defendants Donelson and Long Leaf Trading did not have customer discretion over trades**

The Commodity Exchange Act ("CEA") and National Futures Association ("NFA") make clear that in order to be a CTA, the entity must have discretion over a customer's account. Sometimes this is accomplished by having customers sign a "Power of Attorney" giving the trading company the ability to make trades without contacting the customer. As noted immediately above, the NFA, a self-regulatory organization that reports directly to the CFTC (and runs all of its rules by the CFTC for approval) has indicated that discretion over an account is a key element to determining whether a trading entity must register as a CTA.

Ms. Rebecca Wing, Mr. Donelson's and Long Leaf's attorney, provided deposition testimony that the primary issue she considered in whether Long Leaf/Mr. Donelson needed to register as a CTA was the discretion issue under CFTC regulation 4.14. *See, e.g.,* Rebecca Wing Deposition at 50-53, 90-91 (June 17, 2021).

**Mr. Donelson and Long Leaf relied on Advice of Counsel for Registration Advice**

Ms. Wing also testified that she provided counsel to Mr. Donelson and Long Leaf that the proper registration for Long Leaf was as an Introducing Broker. *See generally* Wing Deposition 35-48 (June 17, 2021). Furthermore, Ms. Wing informed Mr. Donelson and Long Leaf that they did not need to register as a CTA. *Id.*

The CFTC makes the argument that these "registration issues" are non-scienter or "strict liability" offenses and that an advice of counsel defense is not proper. However, Mr. Donelson and Long Leaf are not raising the advice of counsel defense as a CTA looking for guidance, but

rather are trying to determine if they are a CTA such that the registration rules apply to them at all. In other words, the question is whether Long Leaf had to register as a CTA. That is not a strict liability question. If, as the CFTC seems to simply assume, Long Leaf was a CTA and was trying to determine if it needed to comply with the registration issues, then the strict liability standards may apply.

### Conclusion as to the Registration Issues

There are a couple take-aways from the CFTC's arguments regarding Long Leaf's registration as an IB and not a CTA. First, it can be argued that the CFTC is trying to expand its jurisdiction by requiring non-CTAs register as a CTA. There is a proper way to do that – as is spelled out in the Administrative Procedures Act. But, going back to 2017-2019 and trying to apply CTA rules that were not applicable to Long Leaf (and other IBs) via litigation is not the proper way to address this land grab by the CFTC.

Lastly, whether the Court agrees or disagrees as to whether Long Leaf and Mr. Donelson should have registered as a CTA, it is clear from the Wing testimony, the Advice of Counsel, as well as the CFTC regulations under Section 4.14, that material fact issues exist that need to be resolved by a jury.

Respectfully submitted,

/s/ James M. Falvey
James M. Falvey
Falvey Law Office
200 S. Wacker Drive, Suite 3100
Chicago, Illinois 60606
jimfalvey@yahoo.com
312-404-5839

Charlie McElvenny
Charles McElvenny, JD, MSA
Law Office of Charles E. McElvenny
33 N. Dearborn St.
Suite 1000
Chicago, IL 60602
312-291-8330
charlie@cemlawfirm.com