

FILED
3/4/2022
AK
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Commodity Futures Trading Commission, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No. 20-3758 |
| | ) | |
| Long Leaf Trading Group, Inc., | ) | Hon. Thomas A. Durkin |
| James A. Donelson, Timothy M. Evans, | ) | |
| Jeremy S. Ruth, and Andrew D. Nelson, | ) | |
| Defendants. | ) | |

## DEFENDANT'S STATEMENT OF ADDITIONAL FACTS

Defendant Jeremy Ruth states the following additional facts:

1. Defendant became a Series 3 licensed broker on April 28, 2015.

2. Before working at Long Leaf, Defendant had never been employed in a position soliciting customers in regulated finance.

3. Prior to working at Long Leaf, Defendant had worked in the restaurant and internet marketing industries.

4. The Time Means Money structure was not a fund or a discretionary trading program. TMM was a philosophy for how to structure trades and create a plan to enter the commodities market.

5. TMM customers were provided with many risk disclosure statements. In the beginning of every solicitation conversation, Defendant provided a verbal risk disclosure statement. The Power Point presentation presented to customers includes multiple written risk disclosure statements.

6. After the solicitation process, if a customer decided to open an account, they had to submit an application. The application included multiple risk disclosure statements.

1

7. The compliance department of Gain Capital made the decision whether to approve an application. Customers in TMM were typically not novice investors.

8. All customers, including those that utilized the TMM philosophy in their trading certified that they were utilizing genuine risk capital.

9. Once they opened and funded an account, customers had the choice to approve or reject every trade recommended by Defendant and any other AP at Long Leaf. Since these were self-directed accounts, Customers had the ability to trade any product offered by the FCM Gain Capital Group, either by themselves or in a broker-assisted environment.

10. Long Leaf would make its recommendations to its customers and per their self-directed account, the customers would give permission to execute the recommended trade on their behalf.

11. At all times, customers whom chose to utilize the TMM philosophy, could decline to make a recommended trade, exit a trade, enter a new trade, or could withdraw their money from their account.

12. Customers received daily and monthly statements and a yearly 1099.

13. Long Leaf and Defendant did not make the exact same recommendations to every customer. Long Leaf and Defendant would customize each recommendation according to the customer's risk tolerance and financial goals.

14. Long Leaf did not only recommend four-legged out of the money trades. Long Leaf and Defendant recommended credit spreads, both two-legged, three-legged, and four-legged and both in and out of the money. These included trades known as iron condors, iron butterflies, put ratios, front spreads, credit spreads, and calendar swaps.

15. In the event a Long Leaf trade recommendation had four legs to it, customers were given a commission credit of $60/contract. Defendant Evans specifically implemented this policy so the market regulators would not accuse Long Leaf of utilizing 4-legged option spreads to drive up commission costs.

16. Defendant did not create or have input into any of the trade recommendations.

17. Evans and Leeney created and adjusted the trade recommendations according to changes in the market using different sources of information. Their approaches were constantly evolving.

18. Long Leaf made recommendations for trades on the Chicago Mercantile Exchange, the New York Mercantile Exchange, International Commodities Exchange, Chicago Board of Trade, and Commodity Exchange.

19. Steve Beranek is a licensed Registered Investment Advisor who mentioned to defendant Ruth multiple times while going through the solication process as well as being a customer that part of the reason he opened an account was to understand Long Leaf's business model.

20. Rob Mixer continued to approve recommended trades, at his own will, in his account for months after sending an email complaining about his account performance in August 2016.

21. The fact that a customer closes their account at a loss does not reflect whether their account earned money at any point and does not reflect whether they won on their trades. For example, a customer could have won on three small trades in a month but lost on one big trade and thus would reflect a loss for that month.

22. Defendant did not work at Long Leaf at any time during James Donaldson's involvement with Long Leaf.

23. Defendant had a number of TMM customers who he did not solicit. These customers were assigned to Defendant after the other AP's left Long Leaf, were already involved with Long Leaf in a discretionary account and converted their account to self-directed account, or sought out an account without solicitation by Defendant.

24. There are four steps to the solicitation process. In approximately mid-2016, Long Leaf began having junior brokers perform the first two steps of the solicitation process and having a senior broker such as Defendant perform the final two steps. For customers solicited after this change, Defendant may not have made each of the statements described by the CFTC.

<u>s/</u>Jeremy S. Ruth

Jeremy S. Ruth

*Pro se*

4

## CERTIFICATE OF SERVICE

I, Jeremy S. Ruth, hereby certify that on March 4th, 2022, I provided service to the persons listed

below via email:

**Defendants:**

Andrew D. Nelson
Pro se
adnelson0503@gmail.com


James M. Falvey
Attorney for Defendant
James A. Donelson & Long Leaf Trading
jimfalvey@yahoo.com

**Plaintiff's:**

Ashley J. Burden
Senior Trial Attorney
aburden@cftc.gov

Joseph C. Platt
Trial Attorney
jplatt@cftc.gov

Elizabeth M. Streit
Chief Trial Attorney
estreit@cftc.gov

Joseph J. Patrick
Investigator
jpatrick@cftc.gov

*s/*Jeremy S. Ruth

Jeremy S. Ruth

*Pro se*
