

AK

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Commodity Futures Trading Commission, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No. 20-3758 |
| | ) | |
| Long Leaf Trading Group, Inc., | ) | Hon. Thomas A. Durkin |
| James A. Donelson, Timothy M. Evans, | ) | |
| Jeremy S. Ruth, and Andrew D. Nelson, | ) | |
| Defendants. | ) | |

**DEFENDANT JEREMY RUTH'S RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Jeremy Ruth hereby responds to the CFTC's Motion for Summary Judgment

and states as follows:

**FACTS**

Defendant Jeremy Ruth is not liable for fraud under 7 U.S.C. § 6c(b) and C.F.R. § 33.10

because Defendant did not make false or misleading material statements or omissions to

customers and did not act with scienter. Defendant is also not liable for aiding or abetting Long

Leaf in committing fraud under 7 U.S.C. § 6o(1) and 7 U.S.C. § 13c(a) because Long Leaf was

not a CTA and because Defendant acted in accordance with Long Leaf's policies, not through his

own authority.

The CFTC should not be granted summary judgment because it has failed to show that

there is no question of fact or that it is entitled to judgment as a matter of law. First, the CFTC's

motion omits many indisputable facts. Long Leaf is a full-service brokerage that employed a

structured trading approach to enter the futures options markets in a self-directed/broker assisted

environment for some customer accounts titled Time Means Money ("TMM") during the time

1

period Defendant was employed by Long Leaf. The TMM accounts were all individual non-discretionary accounts. The TMM customers, including Defendant's grandfather, Michael J. Bruno of Westchester, IL, and the others mentioned by name by the CFTC, were not unsophisticated investors.

When a potential customer was interested in joining TMM, Long Leaf sent them documents that made full risk disclosures and required the customer to certify that they were using genuine risk capital to fund their account. After opening an account, customers had to approve, deny, or modify every trade, Long Leaf Brokers just executed them.  Customers received daily and monthly statements. Customers had the ability at any time to withdraw their money or to stop making trades.

On top of omitting facts, the CFTC's motion mischaracterizes the trading recommendations that made up the TMM strategy and Defendant's involvement. A TMM customer would typically receive four recommended commodities options trades per month. These could be in the form of many kinds of trades, not just four out-of-the-money options as CFTC claims. The recommendations were customized for each customer according to their risk tolerance and their goals. Defendant never created or customized any recommendations for customers. Defendant made the recommendations to customers at the direction of Defendant Evans. Defendant worked at Long Leaf for approximately 2 years and 5 months and did not work there at any time when Defendant James Donelson was the principal or associated with Long Leaf Trading Group in any capacity. Defendant Ruth has never met Defendant Donaldson.

It is misleading for the CFTC to discuss overall losses because an individual customer's monthly loss does not reflect whether they that they could actually reflect, for example, modest wins on three small trades and a large loss on one. It is also imprecise to say that "substantially

2

all customers lost money participating in Long Leaf's trading program." The evidence the CFTC cites is a snapshot of one moment in time and does not reflect the full history of any particular account.

During Defendant's time working at Long Leaf, he was not the only AP who worked with TMM customers. The CFTC states that "customers" lost $3.1 million during Defendant's time at Long Leaf. Which customers? Lost at what point? Did those customers lose money after earning money on successful trades? The CFTC does not say whether <u>Defendant's</u> customers lost money or whether there was any time during which those customers' accounts were actually making money. Again, an overall loss is a snapshot of one moment in time and does not illustrate what happened with any one account. The CFTC has not shown which customers actually lost money and when, or to show whether or not any of the losses were atypical of the commodity market at the time.

It is misleading for the CFTC to connect Defendant's knowledge of one customer's losses to Defendant's recommendations to another customer. The commodities market, like any market, changes over time. The performance of one customer's options is not an indication of whether a future customer will lose or win on his own options, adjusted to his own wishes.

The CFTC has distorted the facts and has failed to show how any of the statements made by Defendant were false or misleading or how Defendant aided and abetted fraud. Its motion for summary judgment should not be granted as many facts are disputed and as it has not proven its claims.

## SUMMARY JUDGEMENT

The CFTC should be granted summary judgment only if there is no question of genuine material fact and if CFTC is entitled to win as a matter of law.

**ARGUMENT**

**I. Count I: Fraud in violation of Section 4c(b) of the Act, 7 U.S.C. 6c(b) (2018), and C.F.R.**

    **33.10 (2019).**

    **A.**     **Defendant did not make false or misleading statements.**

Whether a statement or omission is misleading depends on the "overall message" and the "common understanding of the information conveyed." *See Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002). "[A] statement is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision." *CFTC v. Rosenberg*, 85 F.Supp.2d 424 (D. N.J. 2000).

The CFTC does not demonstrate in its motion how any of Defendant's statements were actually false or misleading. It only argues that many customers lost money and two complained to Defendant.

Out of thousands of pages of written communications and many hours of recorded phone calls, the CFTC identifies 5 statements made by Defendant Ruth which it states were false or misleading. These five statements were made to three different customers, which the CFTC does not clearly explain in its motion. Whether a statement is misleading depends on the "overall message" conveyed by the defendant.

For example, according to the CFTC's motion, Defendant misled customer Harish Patel when he said, using hypothetical numbers, "following that math over those four assets, on the three, you can expect it to be right; in the long run it would generate 1500; and the one you're

4

wrong losing 1,000; and that would leave you with a net of 500 bucks." This statement conveys to Patel the mathematical structure of TMM options position design and has absolutely nothing to do with results, past or present. There is no evidence that this statement is misleading or untrue. The CFTC argues that Defendant's statement "[T]hese positions are scalable so it's very easy to duplicate that to accomplish 12% on an annual basis" was also misleading. The CFTC does not explain what about this statement is false. This statement was made in the context of a larger conversation about how the math behind a TMM trade design works using the hypothetical numbers discussed above. Defendant is personally embarrassed for the CFTC that they would represent otherwise. It's mind boggling to Defendant that the people of the agency that has been charged with regulating the commodity markets clearly does not know much about the markets they are to regulate…Or this is intentional twisting the events that occurred by the CFTC to present evidence to the court to support its baseless claims. This statement was not a guarantee of a 12% return or a representation that TMM accounts in the past had made 12% annual returns. The CFTC does not show how it is false or misleading to make this statement.

The CFTC's only argument is that Mr. Patel ultimately lost money on his account. The CFTC cites Mr. Patel's results from June 2017, a year and a half after the allegedly misleading statements. In the time that passed between the statements and the losses, Mr. Patel approved four trades per month for 18 months trades, received daily and monthly account statements, and opted to continue his business with Long Leaf every month. The CFTC has no evidence of what happened with Mr. Patel's trades before June 2017, including whether any of his trades won.

The CFTC also presents Defendant's two statements to Janice Janowiak with his statements to other customers. Defendant told Janowiak "[W]e measure our success by our clients' success; now, as a company we wouldn't have the ability to work with hundreds of

clients month after month for six years and oversee millions of dollars if we weren't being profitable for them." Again the CFTC does not explain how this statement is false. The overall losses the CFTC relies on to "prove" these statements were false does not show the whole picture of whether certain customers' accounts were profitable. Defendant also told Janowiak, "[I]f you sell four options, there is a strong statistical likelihood you will win three of them, giving you a much more predictable path to success." Again, Defendant acknowledged here that the customer would likely experience a "statistical likelihood," not a certainty, that the customer would win three option trades. An "objectively reasonable" person would not think these statements to be a guarantee of profits or success.

The final two allegedly misleading statements were made to a potential customer Dale Barnett in August 2017: "I work with a lot of clients and a majority of them make money, and the ones that make money are the ones that keep emotions out of the process. The only time I see people lose money is when they bring emotions into the process …. If you're willing to work with me on that I can ensure [sic] you that things will work out." Defendant also said, "I'm sitting in a chair and I'm looking at a screen and I get to see all the results of my clients so it's very easy for me to be almost certain about our ability to get you to reach your financial goals." Defendant's customers were not novice investors. A reasonable person would not take these statements to be promises or precise statements of the TMM program's performance. Once again, the CFTC does not explain how these statements are false. The statements refer to decision-making processes and the philosophy behind the TMM strategy. In addition, these particular statements are not material because they do not relate to profit potential or risk, and a reasonable person would recognize these statements to be subjective claims and would not give these statements importance when making their decision to invest.

Rather than explain why any of these statements were false or misleading, the CFTC simply states that during Defendant's tenure, "customers in the TMM program lost more than $3.1 million." However, the performance of all TMM accounts during the span of Defendant's time at Long Leaf does not reflect whether Defendant's statements to prospective TMM customers at various points during that time period were false or misleading. The CFTC cites the case *CFTC v. Kratville*, 796 F.3d 873, 892 (8th Cir. 2015). The defendants in that case sent their investors false information that showed their fund's returns at higher levels than they actually were. *CFTC v. Kratville*, 796 F.3d 873, 892 (8th Cir. 2015). They outright lied to their investors about how long the fund had been trading and who their trading houses were and said they had had offers to buy their trading system when the system was not proprietary and they had never received offers to buy it. Id. at 884. Defendant did not make any statements similar to those made in the *Kratville* case.

In a New Jersey case, a broker was found liable for fraud when he told a customer he would place a requested trade but never did, did not send the customer monthly account statements as required, and withdrew funds from the customer's account without his consent for the broker's personal use. *CFTC v. Rosenberg*, 85 F.Supp.2d 424 (D. N.J. 2000). Again, Defendant's conduct is not comparable to the actions in that case.

Whether a statement is material to a reasonable investor is a question for a jury. *Silverman v. Motorola, Inc.,* 798 F. Supp. 2d (N.D. Illinois, July 25, 2011). The CFTC argues that Defendant committed fraud by failing to disclose to customers that "almost all Long Leaf customers lost money as a result of the TMM program." The CFTC does not present evidence of what actual percentage of Defendant's or Long Leaf's customers lost money overall or what percentage of

customers ever made money at any point during the life of their account. Instead, it makes a vague statement about customer losses during a two-year time period.

Defendant was not required by law to disclose whether other TMM customers lost money, and past performance does not indicate future results. That information would not provide a prospective customer with guidance anyway, because it would not indicate the rate at which the past trades were successful and because the trades in the past would not necessarily be recommended again in the future. Defendant "got around" requests for a track record because there was no such thing as a general TMM track record because each TMM customer executed different trade options scaled to their preference.

### C. Defendant did not act with scienter.

The CFTC also must show that Defendant acted with scienter. Scienter is established if Defendant intended to defraud, manipulate, or deceive, or if Defendant's conduct represents an extreme departure from the standards of ordinary care. *Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002). "The term 'scienter' refers to a mental state embracing an intent to deceive, manipulate, or defraud." *Rosenberg* at 448. "In the similar context of federal securities law, we have previously stated that scienter is met when Defendant's conduct involves "highly unreasonable omissions or misrepresentations ... that present a danger of misleading [customers] which is either known to the Defendant or so obvious that Defendant must have been aware of it." *Id*.

Defendant did not intentionally or recklessly mislead or defraud customers. First, the CFTC itself says Defendant was always following the policies set by Long Leaf, not acting out of his own motivation. The CFTC does not offer any evidence that Defendant believed the scripts from Long Leaf to be misleading. As a new financial broker, Defendant had no reason to

think that his statements presented a danger of fraudulently misleading customers because the statements had been approved by Evans, who acted as Long Leaf's compliance officer, and the National Futures Association. Defendant had never worked in finance before working for Long Leaf and had only become a Series 3 broker around the same time he began working at Long Leaf. There was no reason for the CFTC to argue that Defendant should have questioned Long Leaf's approval or knew or should have known that the statements in the script were misleading even though they had been approved by people whose role was to make sure the statements complied with the law.

Furthermore, Defendant's knowledge of the losses incurred one month did not necessarily indicate that potential customers would not earn money in the future. For example, the CFTC argues that Defendant showed scienter when he learned of Patel's losses in July 2017 and later that day emailed a potential customer, Chris Zolton, the following: "Normally with a 10k account my clients Target $500 to $1000 per month. Obviously there are going to be months where we don't win, but getting an average of win in that range is a realistic Target [sic]." Patel participated in the TMM program from approximately January 2016 through July 2017 with an opening investment of $25,700. Defendant's statement to Zolton concerned a potential $10,000 investment that would begin sometime after July 25, 2017. These two customers had different size accounts and were investing during different time periods. According to the CFTC's own advice, past performance does not predict future results. Knowledge of Mr. Patel's experience does not show that Defendant thought Mr. Zolton would never meet the stated targets but told him he could anyway. The CFTC does not state what happened with Mr. Zolton's account and Defendant does not believe he was the broker of record for any and or the majority of Mr.

Zolton's trading. More importantly, the statements made to Zolton were not misleading. Defendant specifically balanced Mr. Zolton's potential for gains with potential for losses.

Due to the CFTC's omissions and misrepresentations, there are many questions of fact, including whether a reasonable person could find Defendant's statements misleading. The CFTC should therefore not be granted summary judgment as a matter of law on Count I.

**II. Count II: Aiding and Abetting Fraud in violation of 7 U.S.C. 6*o*(1) (2018) and 7 U.S.C. 13c(a).**

The CFTC's second count is for aiding and abetting Long Leaf in committing CTA fraud. The elements for proving that Defendant aided and abetted CTA fraud are: "knowledge of the principal's ... intent to commit a violation of the Act; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective." *Damato v. Hermanson*, 153 F.3d (7th Cir. 1998).

First, Defendant is not liable for "aiding and abetting" Long Leaf in CTA fraud because Long Leaf is not CTA. Long Leaf argues that it was not a CTA in its response to the CFTC's motion for summary judgment against it. Defendant agrees with the argument presented by Defendant Donaldson & Long Leaf Trading Group.

Second, if Long Leaf was a CTA, Defendant still would not be liable for aiding and abetting any fraud it committed because Defendant had no reason to believe Long Leaf intended to commit fraud. The CFTC does not attempt to show in its motion that Defendant actually knew that any of Long Leaf's statements were fraudulent or that Long Leaf was knowingly committing fraud. Defendant had no management responsibility or decision-making authority at Long Leaf. Like the CFTC states, Defendant's statements were made in accordance to the scripts provided by Long Leaf. Defendant knew that the scripts were approved by Long Leaf's compliance officer

and Long Leaf's compliance officer represented to all Long Leaf AP's that the National Futures Association approved the sales materials used for solicitation. Defendant had no reason to believe that Long Leaf was committing fraud through the statements in its scripts. Therefore, Defendant did not knowingly associate with an unlawful venture.

In addition, Defendant had no intent to further any violation by Long Leaf. The CFTC does not have any basis for the allegation that Defendant knew Long Leaf had fraudulent intentions but also that Defendant himself acted with the intent to further that fraud. The CFTC motion on Count II should be denied.

## CONCLUSION

The CFTC's motion presents questions of material fact and does not show that the CFTC is entitled to judgment. Defendant asks this court to deny the CFTC's motion for summary judgment.

_s/_Jeremy S. Ruth

Jeremy S. Ruth

_Pro se_

## CERTIFICATE OF SERVICE

I, Jeremy S. Ruth, hereby certify that on March 4th, 2022, I provided service to the persons listed

below via email:

**Defendants:**

Andrew D. Nelson
Pro se
adnelson0503@gmail.com


James M. Falvey
Attorney for Defendant
James A. Donelson & Long Leaf Trading
jimfalvey@yahoo.com

**Plaintiff's:**

Ashley J. Burden
Senior Trial Attorney
aburden@cftc.gov


Joseph C. Platt
Trial Attorney
jplatt@cftc.gov


Elizabeth M. Streit
Chief Trial Attorney
estreit@cftc.gov


Joseph J. Patrick
Investigator
jpatrick@cftc.gov

s/Jeremy S. Ruth

Jeremy S. Ruth

*Pro se*