UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 20-3758 |
| vs. ) | |
| ) | Hon. Thomas A. Durkin |
| ) | |
| Long Leaf Trading Group, Inc. et al. ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT JAMES A. DONELSON'S OPPOSITION TO THE MOTION FOR ENTRY OF SUPPLEMENTAL RELIEF

Defendant James A. Donelson ("Donelson"), submits the following as his response to Plaintiff Commodity Futures Trading Commission's ("CFTC" or "Commission") Motion for Entry of Supplemental Relief ("Motion"):

### INTRODUCTION

The Motion is nothing more than an attempt to impose draconian civil penalties on a defeated litigant. Indeed, this Court already found Defendant Donelson liable for over $3 million in restitution and disgorgement, a sum he will never be able to pay. An additional civil monetary penalty in any amount, much less the number proposed by the Commission, not to mention the proposed injunction, would amount to a financial death penalty. Contrary to the CFTC's argument, such a severe outcome is mitigated by the facts in this case and Donelson's conduct, even as described in this Court's July 27, 2022, Opinion and Order.

**STANDARD**

Sanctions in CFTC enforcement proceedings should be determined with regard to the gravity of the offense and the need for deterrence." Monieson v. Commodity Futures Trading Comm'n, 996 F.2d 852, 862 (7th Cir. 1993). The amount of any civil monetary penalty must be rationally related to the offense, which courts determine by weighing three factors: (1) the nature of the violations, (2) the existence of any injuries inflicted on others by reason of the violations, and (3) a review of the sanctions imposed for similar violations. *U.S. Commodity Futures Trading Comm'n v. Powderly*, No. 17 C 3262, at *4 (N.D. Ill. Mar. 5, 2019)

**ARGUMENT**

I.     A Permanent Injunction is Inappropriate

Donelson is cognizant that this Court has made its findings, but takes issue with the CFTC's mischaracterization of the ruling, for it is material to the additional relief sought. For example, the Motion states that "Donelson's conduct evidences a high level of scienter, which the Court expressly found" *See* Motion, p. 3 and 6. The Court did find scienter, but the CFTC's language imposes a degree which is noticeably absent in the Opinion. This is unfortunately characteristic of the Commission's approach in this case, and it has the effect of elevating conduct that was misleading to sinister. Again, Donelson respects that this Court has made its ruling and, even if he disagrees with the findings, recognizes this response is not the proper time to address them. But, the fact remains that Donelson had only been at Long Leaf for three months at the time of the alleged material omission and he was adopting a new trading program that was a departure from the prior model. Donelson believed that he was moving the company in the right direction and that, because the new trading model was a radical departure form the

prior, unsuccessful one, that he could move ahead with a clear path and consciousness. That may have been, and this Court found it that it was, mistaken and a path to several violations. However, Donelson's actions and the fact pattern here are are quite unlike those cited in the Motion. Those cases involve widespread fraudulent conduct that is beyond the scope of what is even alleged in this case - for example, in *U.S. Commodity Futures Trading Comm'n v. OTC Invs. LLC*, 1:15-cv-00081-MR (W.D.N.C. Jan. 19, 2018), the defendant "knowingly defraud[ed] approximately eighteen different pool participants in a forex pooled investment vehicle for a period of at least four years, using various schemes and artifices to perpetrate these frauds. And in *United States Commodity Futures Trading Commission v. Hunter Wise Commodities, LLC*, 749 F.3d 967, 978 (11th Cir. 2014), the defendant characterized its business to include financing and providing a 'back office' platform for a network of Authorized Independent Dealers that transact leveraged sales in precious metals. There, the Commission showed that when customers' trading positions fell below a minimum margin requirement, dealers would initiate a margin call and liquidate open trading positions. *Id.* Further, the evidence demonstrated that Hunter Wise administered the Portal, extended credit to retail customers through the dealers, and finalized retail customers' transactions. *Id.* There aren't facts in this case to support the implementation or ratification of elaborate schemes such as in the cases cited by the Commission. Rather, this is a case where an individual purchased a business in good faith and sought to operate it to the best of his abilities. The Court's ruling, harsh as it is, does not hold that Donelson was involved in the same types os schemes as *Hunter Wise Commodities, LLC* or *OTC Invs.*

As final consideration, it is an unmistakable fact if Donelson's capacity to trade commodity interests is permanently enjoined, it will be impossible for him to make any meaningful payment towards the amount set forth in this Court's Order.

II.     A Treble or Any Additional Civil Monetary Penalty is not Warranted

The initial amount ordered is sufficient deterrence for this case. Donelson is not a lifelong fraudster or charlatan, regardless of the CFTC's implications. Moreover, adding civil monetary penalties is wholly inconsistent with the CFTC's purported desire to secure restitution - Donelson will likely never be able to pay the amount of restitution and disgorgement already ordered but that likelihood becomes certainty if the penalty is materially increased.

Most important, Donelson's conduct does not justify the most severe possible penalty when compared to similar cases, findings and assessments. The amount of a civil penalty "must . . . be 'rationally related to the offense.'" *CFTC v. Li*, No. 15 C 5839, 2016 WL 8256392, at *8 (N.D. Ill. Dec. 9, 2016) (quoting *Monieson v. CFTC*, 996 F.2d 852, 864 (7th Cir. 1993)). At least three factors guide the inquiry: "(1) the nature of the violations, (2) the injury caused by the violations, and (3) penalties used in similar cases." *Id*. (citing *Monieson*, 996 F.2d at 864) *U.S. Commodity Futures Trading Comm'n v. Reisinger*, No. 11-CV-08567, at *22 (N.D. Ill. Sep. 19, 2017). Also, contrary to the Motion's assertion, courts, unlike the Commission, retain discretion to consider a defendant's ability to pay a penalty. *See, e.g., CFTC v. King" U.S. Commodity Futures Trading Comm'n v. Reisinger*, No. 11-CV-08567, at *23 (N.D. Ill. Sep. 19, 2017). In sum, the cases cited by the CFTC are unlike this one - in both *Li* and *Sarvey,* the defendants engaged in either fictitious or prearranged trading. Neither aggravating factor is applicable here so any penalty should be assigned commensurate with the degree of the offense, which, compared to maximum penalty cases, is relatively modest.

Wherefore, Donelson respectfully requests that this Honorable Court deny the Commission's Motion for Entry of Supplemental Relief, or, in the alternative, to modify and amend the proposed penalties to be consistent with precedent, equity and notions of justice.

Respectfully submitted,

Charlie McElvenny
Charles McElvenny, JD, MSA
Law Office of Charles E. McElvenny
33 N. Dearborn St.
Suite 1000
Chicago, IL 60602
312-291-8330
charlie@cemlawfirm.com