UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-3758 |
| ) | |
| Long Leaf Trading Group, Inc., James A. ) | Hon. Thomas A. Durkin |
| Donelson, Timothy M. Evans, Jeremy S. ) | |
| Ruth, and Andrew D. Nelson, ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF MOTION FOR ENTRY OF SUPPLEMENTAL RELIEF
AGAINST DEFENDANT DONELSON[1]**

Defendant Donelson's perfunctory arguments in response to the CFTC's motion for supplemental relief are unavailing. Apart from expressing general disagreement with the Court's summary judgment ruling, Donelson's position seems to be that his violations of the Commodity Exchange Act ("Act") and CFTC Regulations aren't that bad, restitution and disgorgement are punishment enough, he doesn't have any money, and he needs to be able to trade commodity interests in order to get money. These arguments are easily disposed of.

Donelson argues that the supplemental relief sought by the CFTC—a permanent injunction against trading in commodity interests, and a civil monetary penalty ("CMP") in the amount of three times disgorgement—is unwarranted because his fraud is not as bad the fraud in the cases cited by the CFTC. (Doc. 116, Donelson's Resp. to Mot. for Supp. Relief ("Resp.") at 1-2, 4.) Donelson's argument misses the point. The point is that defendants who commit

---

[1] Defendants Long Leaf Trading Group, Inc. ("Long Leaf") and Jeremy Ruth did not file responses to the CFTC's motion.

intentional fraud should be banned from trading in commodity interests to protect prospective customers and, indeed, the market, from a person with a demonstrated capacity for dishonesty. (*See* Mot. at 5-6 (citing cases).) In recognition of the seriousness of intentional fraud, such defendants should be subject to the maximum allowable CMP. (*See id.* at 10-11.) In any event, Donelson's conduct compares unfavorably (for him) to other cases involving similar penalties. Donelson was the mastermind of a systematic, ongoing fraud scheme resulting in more than $2.3 million in losses for more than a hundred customers, with $1.2 million in ill-gotten gains redounding to Long Leaf. (Doc. 106, Order on CFTC's Mot. for Summ. J. ("Order") at 4 (fraud scheme, losses); Doc. 77.19, Patrick Decl. ¶ 21 (number of customers).) The facts of this case reflect a level of egregiousness at least commensurate with those relied upon by the CFTC in duration, number of victims, and loss amount.[2]

Donelson argues that a CMP is unnecessary because the Court's order on restitution and disgorgement constitutes sufficient "deterrence." (Resp. at 4.) This argument fails. Restitution and disgorgement put Donelson and his victims in the same place they would have been but for the fraud. This is not a punishment, it is merely a return to the *status quo*. Given Donelson's high level of scienter and leadership role in a two-year, multimillion-dollar fraud scheme, a CMP

---

[2] (Doc. 111, CFTC Mot. for Supp. Relief ("Mot.") at 6, 11 (citing, e.g., *CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346 (11th Cir. 2008) (affirming permanent injunction on basis of misrepresentations made to nine customers); *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 727 (E.D.N.Y. 2018) (entering permanent injunction and imposing maximum CMP where customers lost a total of $290K in fraud scheme); *CFTC v. Yumin Li*, No. 15 C 5839, 2016 WL 8256392, at *1 (N.D. Ill. Dec. 9, 2016) (imposing maximum CMP where defendant defrauded employer out of $300K); *CFTC v. Driver*, 877 F. Supp. 2d 968, 974 (C.D. Cal. 2012) (entering permanent injunction and imposing maximum CMP where defendant defrauded "over 100 participants"), *aff'd*, 585 F. App'x 366 (9th Cir. 2014)).

is warranted. To hold otherwise would give Donelson and other, would-be fraudsters an incentive to roll the dice.[3]

Donelson claims that he will "likely never be able to pay" his restitution or disgorgement obligations, so a CMP would be pointless. (*Id*. at 4.) As a threshold matter, Donelson provides no evidence—not even a declaration—to support his claim.[4] The Court should not credit Donelson's unsupported assertion with respect to his finances. Even assuming Donelson is currently unable to pay his restitution or disgorgement obligations (or a CMP) in full, there is nothing to say Donelson will not be able to do so in the future, or over time. Donelson argues that a CMP would inhibit any ability he may have to pay restitution or disgorgement. (*Id*. at 4.) This is problem is easily dealt with. The CFTC hereby requests that the Court order Donelson to satisfy his restitution and disgorgement obligations before paying any CMP.

Donelson argues that "if [his] capacity to trade commodity interests is permanently enjoined, it will be impossible for him to make any meaningful payments towards the amount set forth in this Court's Order." (Resp. at 3.) Donelson's trading strategies at Long Leaf resulted in customer losses totaling more than $2.3 million. (Order at 5.) The idea that Donelson could make enough money trading to repay his restitution or disgorgement obligations does not pass the straight-face test. Moreover, Donelson's expressed desire to continue trading militates in favor of an injunction. Allowing him to trade would put him in a position to defraud future

---

[3] Courts do not consider "deterrence" as a factor in determining whether to impose a CMP. Rather, courts consider the nature of, and injuries caused by, the violations, as well as penalties imposed in similar cases. (*See* Mot at. 11 (citing cases).) Those factors mitigate strongly in favor of a CMP against Donelson.

[4] Citing *CFTC v. Reisinger*, No. 11-CV-08567, 2017 WL 4164197, at *10 (N.D. Ill. Sept. 19, 2017), Donelson argues that a court has discretion to consider a defendant's ability to pay in determining a CMP. (Resp. at 4.) In *Reisinger*, however, the defendant submitted a declaration stating that she was unemployed and had a net worth of -$37,000. *Reisinger*, 2017 WL 4164197, at *10. Donelson has adduced no such evidence of his own financial wherewithal.

victims. He should be able to repay his victims here without engaging in the conduct that resulted in this lawsuit. Donelson has not historically made his living trading commodity interests. Before starting at Long Leaf, Donelson worked as a CPA. (Doc. 82.5, Donelson Dep. 75:10–75:18.) Since Long Leaf ceased operation, Donelson worked as an independent consultant for various companies on tax and accounting issues. (*See id.* at 217:5–219:10.) There is no reason why Donelson's income from this work should not be used to satisfy, if only in part, his restitution, disgorgement, and CMP obligations.

Accordingly, the CFTC respectfully requests that the Court grants the CFTC's motion for supplemental relief.

/s/ Ashley J. Burden

Ashley J. Burden
aburden@cftc.gov
Elizabeth M. Streit
estreit@cftc.gov
Jody Platt
jplatt@cftc.gov
Counsel for Plaintiff CFTC
Commodity Futures Trading Commission
Division of Enforcement
77 West Jackson Blvd.
Suite 800
Chicago, IL 60604
(312) 596-0700

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2022, I provided service to the persons listed below, and by the following means:

| Via the Court's electronic CM/ECF system: | Via email, pursuant to agreement, to: |
|---|---|
| Jim Falvey<br>Falvey Law Office<br>200 S. Wacker Dr., Ste. 3100<br>Chicago, IL 60606-5877<br>jimfalvey@yahoo.com | Jeremey S. Ruth<br>11220 Brista Way<br>Austin, TX 78726<br>jeremysruth@hotmail.com |
| Charles E. McElvenny<br>Law Office of Charles E. McElvenny<br>33 N. Dearborn St., Ste. 1000<br>Chicago, IL 60602<br><br>Counsel to James A. Donelson and Long Leaf Trading Group, Inc.[5] | *Pro se* |

/s/ Ashley J. Burden

Ashley J. Burden
Commodity Futures Trading Commission
Division of Enforcement
77 West Jackson Blvd.
Suite 800
Chicago, IL 60604
(312) 596-0700
aburden@cftc.gov

---

[5] Mr. McElvenny is counsel to Defendant Donelson only, and not to Long Leaf Trading.

5