**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> LONG LEAF TRADING GROUP, INC. ET AL., <br><br> Defendants. | No. 20 C 3758 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

The CFTC filed this motion [111], seeking injunctive relief and civil monetary penalties against Defendants Long Leaf Trading Group, James Donelson, and Jeremy Ruth pursuant to 7 U.S.C. § 13a-1. For the reasons discussed below, the CFTC's motion is granted in part.

**Background**

The Commodity Futures Trading Commission ("CFTC") brought this action against Long Leaf Trading Group ("Long Leaf") and several of its principals and employees, alleging multiple counts of fraud and other violations of the Commodity Exchange Act, 7 U.S.C. §§ 1-26 ("the Act"), and related Regulations, 17 C.F.R. §§ 1-190. The CFTC accused Long Leaf and its agents of defrauding customers with misleading information about losses and profit potential to solicit trades and generate commissions as part of its "out-of-the-money" options trading program. The CFTC further claimed that Long Leaf and certain employees failed to comply with commodity trading advisor, or "CTA," and/or associated person, or "AP," registration

1

and disclosure requirements. The CFTC moved for "partial" summary judgment against Long Leaf, Donelson, and Ruth (together, "Defendants"); the CFTC explained that the motions were "partial" insofar as the CFTC would separately seek injunctive relief and civil monetary penalties should the Court grant the motion. *See* R. 76 at 1 n.1, R. 77 at 1 n.1, R. 79 at 1 n.1.

On July 27, 2022, the Court granted the CFTC's motions for partial summary judgment against Defendants. *See* R. 106 (*CFTC v. Long Leaf Trading Grp., Inc.*, No. 20 C 03758, 2022 WL 2967452 (N.D. Ill. July 27, 2022)). The Court ordered Long Leaf to pay $5,767,145 in restitution and $4,010,994 in disgorgement, held Donelson jointly and severally liable with Long Leaf for $2,376,738 in restitution and $1,235,413 in disgorgement, and ordered Ruth to pay $301,541.39 in both restitution and disgorgement. *Id.*

The CFTC now asks the Court to enjoin Defendants from: (1) "engaging in . . . substantially any activity relating to commodity interests, i.e., a 'trading ban;'" (2) "applying for registration or acting in a capacity that requires registration by Defendants, i.e., a 'registration ban;'" and (3) "engaging in . . . further violative conduct of the kind described in the Complaint" under Section 6c(b) of the Act, 7 U.S.C. § 13a-1(b). *See* R. 111 at 2. The CFTC also requests that the Court impose civil monetary penalties of three times Defendants' ill-gotten gains under Section 6c(d) of the Act, 7 U.S.C. § 13a-1(d). *Id.* at 1. Donelson filed a response in opposition to the CFTC's motion. *See* R. 116. Ruth and Long Leaf did not respond.

## Discussion

I. Injunctive Relief

Section 6c(b) of the Act authorizes the Court to enter injunctive relief upon a showing that a violation occurred and there is "some reasonable likelihood of future violations." *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979). In determining whether there is some reasonable likelihood of future violations, courts consider the totality of the circumstances, including whether the violation was systematic or an isolated occurrence and whether the violator maintains that his conduct was blameless. *See id.* In addition, "the commission of past illegal conduct is highly suggestive of the likelihood of future violations." *CFTC v. Garofalo*, No. 10-CV-2417, 2011 WL 4954082, at *6 (N.D. Ill. May 5, 2011) (citation omitted). Trading and registration bans are appropriate when a defendant's violation of the Act or Regulations poses a threat to the integrity of the markets regulated by the CFTC. *See Monieson v. CFTC*, 996 F.2d 852, 863 (7th Cir. 1993) (noting the CFTC takes a broad view of what threatens the integrity of the markets).

The Court has already concluded that Defendants violated the Act and Regulations. *See* R. 106 at 12-29. Here, there is also a reasonable likelihood that Defendants will commit future violations. The Court addresses each Defendant in turn.

First, Donelson's violations were not isolated or inadvertent. Over the course of two years, he knowingly, or at least with reckless disregard for the truth, misled customers about losses, potential returns, and his own trading experience, in addition to failing to comply with registration and disclosure requirements. *Id.* at 12-22. Further, he appears to believe he is blameless. In opposition to the present motion,

3

Donelson makes excuses for his misconduct, such as that his omissions occurred a few months into his tenure and that he "believed he was moving the company in the right direction." R. 116 at 2. That he continues to downplay the seriousness of his actions at this juncture makes it all the more likely that he will engage in similar misconduct in the future. Moreover, Donelson's prior experience and current employment put him in a position where he could violate the Act and related Regulations again. Donelson has worked in the financial industry, and in particular with trading firms, for over a decade and continues to do so today. According to the CFTC, after Long Leaf ceased operations, Donelson began a trading software venture and consulted for several trading firms. R. 111 at 4. Donelson does not dispute any of these facts or make any suggestion that he is leaving the trading industry behind. To the contrary, he asserts that he *needs* to trade in order to pay the previously ordered restitution and disgorgement. Donelson's continued involvement in the financial industry and trading in combination with his failure to acknowledge the gravity of his misconduct demonstrates some reasonable likelihood that he will commit future violations.

Similarly, over the course of two years, Ruth knowingly misled customers about the history of losses and the probability of returns in Long Leaf's trading program. R. 106 at 24-27. And his employment since leaving Long Leaf has put him in a position to commit other violations. Ruth joined another trading firm called Postrock Brokerage LLC ("Postrock") where he continued working with customers to trade out-of-the-money options, and subsequently tried to start his own introducing

4

broker firm. What's more, the National Futures Association ("NFA") brought a complaint against Ruth related to his work at Postrock, alleging that he made misleading statements to customers, failed to disclose customer losses and the impact of commissions on account performance, and placed unauthorized trades and trades with no economic benefit on behalf of customers. *See* R. 111-3. Ruth settled these charges on a no-admit-or-deny basis, but the fact of the complaint and the remarkable similarity between the allegations and his conduct at Long Leaf at least raises the specter of misconduct going forward. Ruth's lack of response to the present motion deprives the Court of any facts to the contrary. Moreover, his hostile response to the CFTC's efforts to confer on a briefing schedule for the present motion suggests a lack of respect for the agency's enforcement authority, and in combination with his work since leaving Long Leaf, amounts to a reasonable likelihood of future violations. *See* R. 113-1.

Finally, Long Leaf, acting through its principals and employees, failed to inform and misled customers regarding past poor performance of its trading program and the probability of potential returns for over four years, in addition to committing registration and disclosure violations. R. 106 at 29. Such systematic conduct suggests a reasonable likelihood of future violations. While Long Leaf has since been involuntarily dissolved for a failure to pay fees, that dissolution can be undone and does not preclude the relief sought. R. 111-2; *see, e.g., SEC v. Diversified Corp. Consulting Grp.*, 378 F.3d 1219, 1228 (11th Cir. 2004) (affirming entry of injunction against a dissolved corporation); *SEC v. Amerindo Inv. Advisors Inc.*, No. 05 CIV.

5

5231 RJS, 2014 WL 2112032, at *13 (S.D.N.Y. May 6, 2014) (enjoining "inactive" corporation), *aff'd*, 639 F. App'x 752 (2d Cir. 2016). Indeed, there are some facts that suggest Donelson may resurrect the entity under a new name. R. 111 at 7. Donelson did not comment on the future of Long Leaf in his response. And like Ruth, Long Leaf provided no response in opposition to this motion. In sum, because there is some reasonable likelihood that Defendants will engage in future violations, a permanent injunction against future violations of the Act and Regulations is appropriate.

Defendants' fraudulent conduct also warrants permanent trading and registration bans. Fraud is one of the "primary threats to market integrity." *See CFTC v. Harrison*, 255 F. Supp. 3d 645, 646 (D.S.C. 2015). Thus, contrary to Donelson's contention, courts have imposed permanent trading and registration bans where, as here, defendants failed to disclose information and made misleading statements to their customers. *See, e.g., CFTC v. Wilshire*, 531 F.3d 1339, 1343, 1347-48 (11th Cir. 2008) (affirming permanent injunction against engaging in commodity-related activity where defendants "made misleading statements to investors, promised high profits, suggested that other customers were very successful, downplayed the risks of commodity trading, and used seasonal information to suggest profit potential"); *CFTC v. Complete Devs., LLC*, No. 4:10 CV 2287, 2014 WL 794181, at *17, 27 (N.D. Ohio Feb. 26, 2014) (imposing permanent trading and registration bans where defendants made false statements to investors regarding risk of loss, rates of return, and the experience of the trading team); *CFTC v. First Capitol Futures Grp.*, No. CIVA10900488CVWDW, 2010 WL 1713617, at *2, 10 (W.D. Mo.

Feb. 18, 2010) (entering permanent trading and registration bans where defendants misrepresented potential profits and risks of trading options and failed to disclose their losing performance record).

Donelson's assertion that a permanent trading ban will make it impossible for him to make any meaningful payment toward the amount he owes in restitution and disgorgement is neither supported by any specific facts as to his finances nor relevant. The only question is whether he is reasonably likely to violate the Act or accompanying Regulations if not enjoined. Donelson's claim that he needs to trade in order to pay the ordered amount, coupled with his claim that he will "likely never" be able to pay it, only serves to increase that likelihood. The Court thus finds that permanent trading and registration bans and an injunction on further violations of the Act and Regulations are appropriate with respect to Defendants.

II.     Civil Monetary Penalty

Section 6c(d)(1) authorizes the Court to assess a civil monetary penalty not exceeding the greater of $199,094 or triple the monetary gain to the Defendants for each violation. *See* 7 U.S.C. § 13a–1(d)(1); 17 C.F.R. § 143.8 (prescribing the inflation-adjusted maximum penalty). A civil monetary penalty must be rationally related to the offense. *See Monieson*, 996 F.2d at 862. Accordingly, to determine the appropriate civil monetary penalty, courts consider: "(1) the nature of the violations, (2) the existence of any injuries inflicted on others by reason of the violations, and (3) a review of the sanctions imposed for similar violations." *See CFTC v. Powderly*, No. 17

7

C 3262, 2019 WL 1045004, at *2 (N.D. Ill. Mar. 5, 2019) (citing *Monieson*, 996 F.2d at 862).

Here, Defendants' violations were demonstrably serious and caused real harm to retail investors. For a period of years, customers collectively lost millions of dollars through Long Leaf's trading program, while Defendants collected millions in commissions. Donelson and Ruth knew about and withheld information about Long Leaf's history of losses and made misleading statements to their customers about the prospect of returns, and in Donelson's case, his own experience. Defrauding customers is a violation of the core provisions of the Act and should be considered very serious. *Wilshire*, 531 F.3d at 1346 (citation omitted). Donelson and Long Leaf also went beyond this fraud in failing to comply with certain registration and disclosure requirements.

Given the seriousness of the violations and the substantial harm to customers, civil monetary penalties are warranted against Defendants. However, on review of sanctions in other cases, imposing the penalty that the CFTC requests of three times Defendants' respective ill-gotten gains would be excessive. This case does not feature the aggravating circumstances that are typically present in cases where courts impose the maximum civil monetary penalty, such as fictitious or prearranged trading or the misappropriation of customer funds for personal use. *Cf. CFTC v. McDonnell,* 332 F. Supp. 3d 641 (E.D.N.Y. 2018); *CFTC v. Li*, No. 15 C 5839, 2016 WL 8256392 (N.D. Ill. Dec. 9, 2016); *CFTC v. Sarvey,* No. 08 C 192, 2012 WL 426746 (N.D. Ill. Feb. 10, 2012); *CFTC v. Driver,* 877 F. Supp. 2d 968 (C.D. Cal. 2012).

Therefore, the Court has determined to assess civil monetary penalties equal to half of Defendants' respective ill-gotten gains. The Court acknowledges that some courts have applied higher penalties in similar circumstances. *See, e.g.*, *Complete Devs.*, 2014 WL 794181, at *29 (imposing civil monetary penalty equal to amount received in commissions). But here, in light of the amounts Defendants must pay in restitution and disgorgement and the permanent bans on trading and registration, penalties equal to half of Defendants' ill-gotten gains are adequate and not unduly harsh.

Donelson argues no civil monetary penalty is necessary because the ordered restitution and disgorgement constitute sufficient deterrence. However, civil monetary penalties serve several important purposes that are distinct from the aims of restitution and disgorgement. Civil monetary penalties "signify the importance of" and "act to vindicate" provisions of the Act and the Regulations and "remind both the recipient of the penalty and other persons subject to the Act that noncompliance carries a cost." *CFTC v. Emerald Worldwide Holdings, Inc.*, No. CV03-8339AHM, 2005 WL 1130588, at *11 (C.D. Cal. 2005) (citation omitted). It follows then that courts commonly impose civil monetary penalties alongside restitution and disgorgement in cases such as this one where Defendants defrauded customers. *See, e.g.*, *CFTC v. Battoo*, No. 12-CV-07127, 2016 WL 3059856, at *12 (N.D. Ill. Jan. 11, 2016) (ordering defendants to return the funds solicited from customers, disgorge ill-gotten gains, and pay a civil monetary penalty); *First Capitol*, 2010 WL 1713617, at *10-13 (ordering restitution of customer losses, disgorgement of ill-gotten gains, and civil monetary penalties); *CFTC v. Carnegie Trading Grp., Ltd.*, 450 F. Supp. 2d 788,

9

806 (N.D. Ohio 2006) (same). For these reasons, it is appropriate to impose a civil monetary penalty in addition to the previously ordered restitution and disgorgement.

Donelson further suggests that he is unable to pay any additional penalty, and that imposing such a penalty would make it impossible for him to pay what he owes in restitution and disgorgement. The Court may, but is not required to, consider a defendant's ability to pay in assessing a civil monetary penalty. *Powderly*, 2019 WL 1045004, at *4 (citing *Brenner v. C.F.T.C.*, 338 F.3d 713, 723 (7th Cir. 2003)). But here, Donelson did not provide any support for his asserted inability to pay. He did not include a declaration or point to any specific facts regarding his finances, net worth, salary, or earning potential. *Cf. CFTC v. Reisinger*, No. 11-CV-08567, 2017 WL 4164197, at *10 (N.D. Ill. Sept. 19, 2017), *vacated on other grounds* (N.D. Ill. Sept. 25, 2018) (considering inability to pay civil monetary penalty where defendant included a declaration stating that she was unemployed and had a negative net worth). Instead, the record reflects his ongoing employment as an independent consultant. *See* R. 111-1. Donelson's asserted inability to pay, without any support and with facts to the contrary, does not justify a lesser penalty.

The Court therefore assesses civil monetary penalties as follows: Donelson is jointly and severally liable with Long Leaf for a civil monetary penalty of $617,706.50. Long Leaf is separately ordered to pay a civil monetary penalty of $1,387,790.50. Lastly, Ruth is ordered to pay a civil monetary penalty of $150,770.50.

## Conclusion

For the foregoing reasons, the Court grants in part the CFTC's motion for supplemental relief. The Court permanently enjoins Defendants from (1) trading

commodity interests, directly or indirectly, for themselves or on behalf of others; (2) applying for registration or acting in any capacity that requires registration; and (3) violating the Act or any Regulations. Donelson is jointly and severally liable with Long Leaf for a civil monetary penalty of $617,706.50. Long Leaf is further ordered to pay a civil monetary penalty of $1,387,790.50. Ruth is ordered to pay a civil monetary penalty of $150,770.50. The civil monetary penalties are immediately due and owing, but only after Defendants' restitution and disgorgement obligations have been satisfied should any payments be applied to satisfy any portion of the civil monetary penalties.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: December 6, 2022